## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE DOE 1 and JANE DOE 2, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:20-cv-0862-JPW |
| | : | |
| v. | : | (Judge Jennifer P. Wilson) |
| | : | |
| DARDEN RESTAURANTS, INC., | : | |
| GMRI, INC. d/b/a LONGHORN | : | |
| STEAKHOUSE,  and KYLE DRAKE, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

## DEFENDANTS DARDEN RESTAURANTS, INC. AND GMRI, INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND DISMISS PLAINTIFFS' COMPLAINT

TABLE OF CONTENTS

PAGE

I.  INTRODUCTION ....................................................................1

II.  PROCEDURAL HISTORY ........................................................3

III.  STATEMENT OF RELEVANT FACTS........................................4

    A.  Plaintiffs Agreed to Arbitrate Disputes Concerning Their
        Employment and Employment Termination.......................................4

    B.  The Dispute Resolution Process Binds the Company and the
        Employee and is Fair to Both Parties.............................................5

    C.  Plaintiffs' Claims Fall Within the Scope of the DRP .........................7

    D.  Plaintiffs Commenced Litigation and Refused to Arbitrate................8

IV.  STATEMENT OF QUESTIONS PRESENTED ...........................9

V.  LEGAL ARGUMENT.............................................................10

    A.  The DRP Falls Within The Scope Of The Federal Arbitration
        Act .........................................................................................10

    B.  The Parties Have Delegated Exclusive Authority to the
        Arbitrator to Decide Issues Relating to Arbitrability........................11

    C.  Enforcement of the Dispute Resolution Process is Heavily
        Favored ...................................................................................13

        1.  The DRP is Valid and Enforceable, and Plaintiffs'
            Claims Fall Within Its Scope ................................................14

    D.  Dismissal Is Appropriate; In The Alternative, The Case Should
        Be Stayed ................................................................................18

VI.  CONCLUSION.....................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. GMRI DARDEN, d/b/a Olive Garden*,
  1-18-CV-00587  (W.D. Mich. Nov. 6, 2018) ......................................................3

*Asberry-Jones v. Wells Fargo Bank, Nat'l Assn., et al.*,
  2019 WL 2077731 .................................................................................15, 16, 17

*AT&T Tech. v. Commc'n Workers*,
  475 U.S. 643 (1986)...........................................................................................11

*Blair v. Scott Specialty Cases*,
  No. 00CV3865, 2002 WL 1838486 (E.D. Pa. May 7, 2002) ......................14, 18

*Blair v. Scott Specialty Gases*,
  283 F.3d 595 (3d Cir. 2002) .........................................................................15, 17

*Chambers v. Longhorn Steakhouse, et al.*,
  No. 2:19-cv-17627, Dkt. No. 11 (D.N.J. Nov. 14, 2019).....................................3

*Circuit City Stores, Inc. v. Adams*,
  532 U.S. 105 (2001)......................................................................................10, 13

*Colon v. Conchetta, Inc.*,
  No. CV 17-0959, 2017 WL 2572517 (E.D. Pa. June 14, 2017).........................12

*Da Silva v. Darden Rests., Inc.*,
  No. 17-cv-5663-ODW, 2018 WL 3533364 (C.D. Cal. July 20,
  2018) ....................................................................................................................3

*Darden Rests., Inc. v. Ostanne*,
  255 So. 3d 382 (Fla. 4th DCA 2018), *review denied* No. SC18-
  1927, 2019 WL 4197197 (Fla. Sept. 5, 2019) ....................................................3

*Eisenbach v. Ernst & Young U.S. LLP*,
  No. CV 18-1679, 2018 WL 5016993 (E.D. Pa. Oct. 16, 2018) .........................12

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995)..........................................................................11, 15

*Gillespie v. Colonial Life & Acc. Ins. Co.*,
   No. CIV.A. 08-689, 2009 WL 890579 (W.D. Pa. Mar. 30, 2009)....................18

*Grzanecki v. Darden Rests.*,
   No. 1:19-cv-05032, 2020 WL 1888917..............................................................3

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524, 202 L. Ed. 2d 480 (2019).....................................................11, 12

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002)...........................................................................................11

*Janiga v. Questar Capital Corp.*,
   615 F.3d 735 (7th Cir. 2010) .........................................................................16

*Kirleis v. Dickie, McCamey & Chilcote, P.C.*,
   560 F.3d 156 (3d Cir. 2009) ...........................................................................15

*Lloyd v. Hovensa, LLC*,
   369 F.3d 263 (3d Cir. 2004) ...........................................................................18

*Mays v. Olive Garden*,
   No. 2:19-cv-12231, 2019 WL 5212219 (E.D. Mich. Oct. 16, 2019) ..................3

*Morton v. Darden Rests., Inc.*,
   No. 8:17-1865, 2018 WL 1531634 (D.S.C. Mar. 2, 2018) ................................3

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
   460 U.S. 1 (1983)..............................................................................13, 14, 17

*Myers v. Darden Rest. Group.*,
   No. 14-13316, 2015 WL 5693673 (E.D. Mich. Feb. 13, 2015) .........................3

*Nelson v. Brown*,
   No. CV 17-3232, 2019 WL 368597 (E.D. Pa. Jan. 28, 2019)...........................16

*Noye v. Johnson & Johnson*,
   No. 1:15-CV-2382, 2020 WL 1082605 (M.D. Pa. Mar. 5, 2020)...............13, 18

iii.

*Pace v. Scott, et al.*,
   No. 1:19-cv-01580-AJT-MSN, Dkt. No. 20 (E.D. Va. June 24,
   2020) .................................................................................................3

*PacifiCare Health Sys., Inc. v. Book*,
   538 U.S. 401 (2003)..........................................................................14

*Parker v. Briad Wenco, LLC*,
   No. CV 18-04860, 2019 WL 2521537 (E.D. Pa. May 14, 2019).......18

*Preston v. Ferrer*,
   552 U.S. 346 (2008)..........................................................................13

*Quilloin v. Tenet HealthSystem Philadelphia, Inc.*,
   673 F.3d 221 (3d Cir. 2012) .......................................................13, 16

*Reed v. Darden Rests.*,
   213 F. Supp. 3d 813 (S.D. W. Va. 2016)............................................3

*Rent-A-Center, West, Inc. v. Jackson*,
   561 U.S. 63 .............................................................................11, 12, 14

*S. Jersey Sanitation Co., Inc. v. Applied Underwriters Captive Risk
   Assurance Co., Inc.*,
   840 F.3d 138 (3d Cir. 2016) .............................................................12

*Spinetti v. Serv. Corp. Int'l*,
   324 F.3d 212 (3d Cir. 2003) .............................................................10

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
   363 U.S. 574 (1960)..........................................................................14

*Worman v. FedEx Ground Package Sys. Inc.*,
   76 Pa. D. & C.4th 292 (Com. Pl. 2005)............................................10

**Statutes**

Civil Rights Act of 1964 Title VII...................................................*passim*

Fair Labor Standards Act ........................................................................8

Federal Arbitration Act ...................................................................*passim*

iv.

Defendants Darden Restaurants, Inc. and GMRI, Inc. d/b/a LongHorn Steakhouse (collectively referred to as "GMRI"),[1] pursuant to 9 U.S.C. § 4, move for the entry of an order compelling Plaintiffs Jane Doe #1 and Jane Doe #2 ("Plaintiffs") to arbitration and dismissing this action or, in the alternative, staying this action pending the completion of arbitration.[2]

## I.    INTRODUCTION

Plaintiffs Jane Doe #1 ("Doe #1") and Jane Doe #2 ("Doe #2") must pursue their lawsuit against Defendants in arbitration.  On May 28, 2020, Plaintiffs filed their Complaint alleging hostile work environment and sexual harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and negligent supervision and retention against GMRI (their former employer), and intentional infliction of emotional distress and assault and battery against Kyle Drake ("Mr. Drake") (their former supervisor). (Dkt. No. 1, pp. 29-54; **Exhibit A to Motion**, Declaration of Melissa Ingalsbe, ¶ 14 ("M.I. Decl.")).  More than four years prior, on January 11, 2014 and February 16, 2016, Doe #1 and Doe #2 signed valid

---

[1] GMRI is a subsidiary of Darden Restaurants, Inc. and operates approximately 1,700 restaurants throughout the Country, including The Olive Garden Italian Restaurant, LongHorn Steakhouse ("LongHorn"), Cheddar's Scratch Kitchen, Yard House, The Capital Grille, Seasons 52, Bahama Breeze, and Eddie V's.  (M.I. Decl., ¶ 4).

[2] In the event that GMRI's instant motion is denied, GMRI respectfully requests leave to file an Answer to Plaintiffs' Complaint within twenty-one days of the Court's decision on this motion.

arbitration agreements and voluntarily agreed to arbitrate employment-related disputes (including the claims asserted here) pursuant to Darden's Dispute Resolution Process ("DRP"). (M.I. Decl. ¶¶ 8, 11; **M.I. Decl. Exhibit 1**, Darden's January 2013 DRP; **M.I. Decl. Exhibit 2**, DRP Acknowledgment Executed by Jane Doe #1 on January 11, 2014; **M.I. Decl. Exhibit 3**, DRP Acknowledgment Executed by Jane Doe #2 on February 16, 2016; **Exhibit B to Motion**, Joint Stipulation Regarding Documents Signed By Jane Doe Plaintiffs)[3].

The U.S. Supreme Court, the Court of Appeals for the Third Circuit, and the Pennsylvania courts, as well as numerous courts across the country, have all ruled that such agreements are enforceable with respect to the claims raised in Plaintiffs'

---

[3] The Parties stipulate that Jane Doe #1 and Jane Doe #2 signed the DRP Acknowledgments attached as Exhibits 2 and 3 to Exhibit A to the Motion and Exhibits 1 and 2 to Exhibit B to the Motion.  The Parties agree to redact Plaintiffs' names while they separately address their desire to proceed with a pseudonym designation.

Complaint.[45] Therefore, Plaintiffs should be compelled to resolve their claims by the mutually-agreed upon DRP and its final and binding arbitration provision.

## II.    PROCEDURAL HISTORY

On May 28, 2020, Plaintiffs filed a Complaint against GMRI and Mr. Drake alleging hostile work environment and sexual harassment in violation of Title VII and negligent supervision and retention against GMRI, and intentional infliction of emotional distress and assault and battery against Mr. Drake. (Dkt. No. 1).  GMRI executed a waiver of the service of summons, filed June 5, 2020, and causing its responsive pleading to be due July 28, 2020. (Dkt. Nos. 4 & 5).  Mr. Drake executed a waiver of the service of summons, filed July 22, 2020, and causing his responsive

---

[4] *See, e.g.*, *Pace v. Scott, et al.*, No. 1:19-cv-01580-AJT-MSN, Dkt. No. 20, (E.D. Va. June 24, 2020); *Grzanecki v. Darden Rests.*, No. 1:19-cv-05032, 2020 WL 1888917 (N.D. Ill. Apr. 16, 20200;*Chambers v. Longhorn Steakhouse, et al.*, No. 2:19-cv-17627, Dkt. No. 11 (D.N.J. Nov. 14, 2019); *Mays v. Olive Garden*, No. 2:19-cv-12231, 2019 WL 5212219 (E.D. Mich. Oct. 16, 2019); *Anderson v. GMRI DARDEN, d/b/a Olive* Garden, Case No. 1-18-CV-00587, Dkt. No. 18 (W.D. Mich. Nov. 6, 2018); *Da Silva v. Darden Rests., Inc.*, No. 17-cv-5663-ODW, 2018 WL 3533364, at *5 (C.D. Cal. July 20, 2018); *Morton v. Darden Rests., Inc.*, No. 8:17-1865, 2018 WL 1531634 (D.S.C. Mar. 2, 2018), *adopted* 2018 WL 1524093, at *1 (D.S.C. Mar. 28, 2018); *Myers v. Darden Rest. Group.*, No. 14-13316, 2015 WL 5693673 (E.D. Mich. Feb. 13, 2015); *Reed v. Darden Rests.*, 213 F. Supp. 3d 813, 820 (S.D. W. Va. 2016); *Darden Rests., Inc. v. Ostanne*, 255 So. 3d 382 (Fla. 4th DCA 2018) (reversing trial court's order denying Darden's motion to compel arbitration), *review denied* No. SC18-1927, 2019 WL 4197197 (Fla. Sept. 5, 2019).

[5] Unpublished cases attached as **Exhibits 2-21**.

pleading to be due August 3, 2020. (Dkt. No. 9).

## III.   STATEMENT OF RELEVANT FACTS

### A.   Plaintiffs Agreed to Arbitrate Disputes Concerning Their Employment and Employment Termination

Plaintiffs are former GMRI employees who worked as servers at GMRI's LongHorn Steakhouse in Wilkes-Barre, Pennsylvania (Store No. 5436).  (M.I. Decl. ¶¶ 9-10). Doe #1 worked at this location from January 11, 2014 to May 1, 2019, and Doe #2 worked at this location from February 16, 2016 to May 1, 2019. (*Id.*).  GMRI terminated Doe #1's employment on or about May 1, 2019 because she smoked a vape pen during work on company property. (Dkt. No. 1 at ¶137; M.I. Decl. ¶ 9). Doe #2 stopped showing up to work, and as a result on May 1, 2019 GMRI separated her employment as a voluntary resignation (M.I. Decl. ¶ 10).

In their Complaint, Plaintiffs allege hostile work environment, sexual harassment, and negligent supervision and retention against GMRI, and intentional infliction of emotional distress and assault and battery against Mr. Drake. (Dkt. No. 1, ¶¶155-291).  While GMRI denies Plaintiffs' allegations,[6] this action was brought in the wrong forum.

---

[6] Mr. Drake, through his own counsel, denies the allegations, as well.

4

On January 11, 2014, and February 16, 2016, shortly after accepting employment with GMRI and as a condition of such employment, Plaintiffs agreed to the terms and conditions of DRP:

> **I acknowledge that I have received and/or have had the opportunity to read this arbitration agreement. I understand that this arbitration agreement requires that disputes that involve the matters subject to the agreement be submitted to mediation or arbitration pursuant to the arbitration agreement rather than to a judge or jury in court.** I agree as a condition of my employment, to submit any eligible disputes I may have to the DRP and to abide by the provisions outlined in the DRP. I understand this includes, for example, claims under state and federal laws relating to harassment or discrimination, as well as other employment-related claims as defined by the DRP. Finally, I understand that the Company is equally bound to all of the provisions of the DRP.

(M.I. Decl. ¶ 11; **<u>M.I. Decl. Exs. 2 & 3</u>**) (emphasis in original).[7] There is no record of Plaintiffs objecting to the DRP during their employment with GMRI. (M.I. Decl. at ¶ 12).

## B.  The Dispute Resolution Process Binds the Company and the Employee and is Fair to Both Parties

GMRI utilizes a DRP to resolve employment-related claims with its employees. (M.I. Decl. ¶ 6). The DRP is "governed by the Federal Arbitration Act"

---

[7] The DRP is presented to employees like Doe #1 and Doe #2 in booklet format in both English and Spanish. DRP pages 1-15 represent the DRP's English version and the second DRP pages 1-15 represent the DRP's Spanish version. (M.I. Decl. ¶ 8).

and applies to all GMRI employees across the country as a term and condition of employment. (M.I. Decl. ¶ 6; **M.I. Decl. Ex. 1**, inside cover page). It sets forth a dispute resolution process consisting of four steps: 1) Open Door, 2) Peer Review, 3) Mediation, and 4) Final and Binding Arbitration. (M.I. Decl. ¶ 6; **M.I. Decl. Ex. 1**, pp. 2, 12). All employment-related disputes, subject to limited exceptions not applicable here, fall within the scope of the DRP. (M.I. Decl. ¶ 6; **M.I. Decl. Ex. 1**, p. 2). Importantly, the DRP does not prevent employees from exercising their statutorily protected rights, including their right to file a charge with state or federal administrative agencies (which Plaintiffs have already done here). (**M.I. Decl. Ex. 1**, p. 3).

As described above, if a dispute cannot be resolved in the initial steps (Open Door, Peer Review, and Mediation), the employee or GMRI can submit the dispute to final and binding arbitration. (M.I. Decl. ¶ 6; **M.I. Decl. Ex. 1**, p. 6). Arbitration of an eligible legal dispute is conducted pursuant to the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association. (**M.I. Decl. Ex. 1**, p. 7). Regarding the rights of the parties, both the employee and GMRI have the right, but are not required, to be represented by counsel at the arbitration at their own expenses. (*Id.*). If the employee notifies GMRI at least thirty (30) days prior to the hearing that she will not be represented by counsel, GMRI will also not be represented by counsel. (*Id.*). Both parties are able to subpoena witnesses and

6

documents for the arbitration hearing; arrange for a court reporter; and submit post-hearing briefs. (*Id.* at p. 8). Arbitral decisions are final and binding on GMRI and the employee, and both have equal rights to bring an action to compel arbitration and to seek judicial enforcement of the arbitrator's decision. (*Id.* at pp. 2, 6-9, 15).

Regarding cost, GMRI "will pay the arbitrator's fees and expenses, any costs for the hearing facility, and any costs of the arbitration service." (*Id.* at pp. 7, 12, 15). Employees, such as Plaintiffs, are responsible for their own attorneys' fees and costs. (*Id.* at pp. 7, 12, 15). In terms of location, under the DRP arbitration must occur in or near the city of the restaurant where the issue/dispute occurred unless the employee and GMRI agree to hold it elsewhere. (*Id.* at p. 7).

The chosen arbitrator "has the same authority as a court of law to grant requested relief." (*Id.* at p. 8). As such, the arbitrator "has the authority to dismiss disputes that do not state a legal claim." (*Id.* at p. 2). An arbitrator is chosen pursuant to the procedures set forth by the applicable arbitration service; alternatively, the parties may jointly select an arbitrator. (*Id.* at p. 6). The arbitrator must "issue a written decision, including a statement of the arbitrator's findings of facts and conclusions of law, within thirty (30) days after the date the hearing ends." (*Id.* at p. 8).

## C.    Plaintiffs' Claims Fall Within the Scope of the DRP

Pursuant to the DRP, disputes that state a legal claim must be submitted to

arbitration.  (**M.I. Decl. Ex. 1**, pp. 2, 6).  These disputes include but are not limited to:

> claims that arise under the Civil Rights Act of 1964, Americans With Disabilities Act, Fair Labor Standards Act, Age Discrimination in Employment Act, and Family Medical Leave Act.

(*Id.* at 2; **M.I. Decl. Exs. 2 & 3** ("…this includes, for example, claims under state and federal laws relating to harassment or discrimination…")).  The DRP is unequivocal—it covers all employment-related disputes subject only to narrow exceptions, none of which apply here.  (**M.I. Decl. Ex. 1,** p. 2).  It applies equally to Plaintiffs and GMRI, stating:

> The DRP, instead of court actions, is the sole means for resolving covered employment-related disputes.  Disputes eligible for DRP must be resolved only through DRP, with the final step being binding arbitration heard by an arbitrator. This means DRP-eligible disputes will not be resolved by a judge or jury.  Neither the Company nor the Employee may bring DRP-eligible disputes to court.  The Company and the Employee waive all rights to bring a civil court action for these disputes.

(*Id.;* **M.I. Decl. Exs. 2 & 3** ("…I understand that the Company is equally bound to all of the provisions of the DRP.")).  The DRP, therefore, clearly requires GMRI and employees like Plaintiffs to arbitrate their disputes; they must not litigate them in court.

### D.    Plaintiffs Commenced Litigation and Refused to Arbitrate

On May 28, 2020, Plaintiffs filed a Complaint in the United States District

Court for the Middle District of Pennsylvania alleging hostile work environment and sexual harassment in violation of Title VII and negligent supervision and retention against GMRI, and intentional infliction of emotional distress and assault and battery against Mr. Drake. (Dkt. No. 1, ¶¶ 155-291). Prior to filing their Complaint, on May 30, 2019 and May 14, 2020, GMRI reminded Plaintiffs of the parties' mutual obligation to pursue employment-related disputes in arbitration. (**M.I. Decl. Exhibit 4**, May 30, 2019 DRP Letter; **Exhibit 1**, May 14, 2020 DRP E-mail Chain). By bringing this action instead of submitting their claims to arbitration, Plaintiffs defied their expressed agreement in the DRP, as well as federal and state policy favoring the use of alternative dispute resolution methods. Accordingly, this Court should compel Plaintiffs' compliance with the mandatory arbitration provisions contained in the DRP and dismiss their claims without prejudice.

## IV.   STATEMENT OF QUESTIONS PRESENTED

Have the Parties delegated exclusive authority to the Arbitrator to decide issues relating to arbitrability?

**Suggested Answer:** Yes.

Did Plaintiffs entered into valid and binding arbitration agreements with GMRI?

**Suggested Answer:** Yes.

Do Plaintiffs' claims fall within the arbitration agreement's scope?

9

**Suggested Answer:** Yes.

Should this Court compel Plaintiffs to arbitrate all claims and issues in this matter in accordance with the terms of the arbitration agreement, should the Court dismiss Plaintiffs' Complaint?

**Suggested Answer:** Yes.

## V.   LEGAL ARGUMENT

### A.   The DRP Falls Within The Scope Of The Federal Arbitration Act

The Federal Arbitration Act ("FAA") applies to the DRP.  First, the DRP expressly states that the FAA governs.  (**<u>M.I. Decl. Ex. 1</u>**, inside cover page). Further, GMRI owns and operates approximately 1,700 restaurants through various subsidiaries.  (M.I. Decl ¶ 4).  As such, GMRI's national operations and employment practices implicate matters of interstate commerce and thus, the DRP is a "contract evidencing a transaction involving commerce" sufficient to trigger application of the FAA. 9 U.S.C. § 2; *see Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 218 (3d Cir. 2003) (citing *Circuit City*, 532 U.S. at 119) ("[Circuit City] held that with a limited exception (not applicable here), arbitration agreements covering employment-related claims fall within the FAA's provisions."); *Worman v. FedEx Ground Package Sys. Inc.*, 76 Pa. D. & C.4th 292, 298 (Com. Pl. 2005) (referencing *Circuit City* and granting motion to compel arbitration).  The application of the FAA's liberal policy favoring arbitration to this action demonstrates that Plaintiffs must

submit their claims to arbitration.

**B.      The Parties Have Delegated Exclusive Authority to the Arbitrator to Decide Issues Relating to Arbitrability**

Normally, in deciding whether to compel arbitration, the court is charged with determining two "gateway" issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). However, there is an exception to this general rule when "the parties clearly and unmistakably provide otherwise." *AT&T Tech. v. Commc'n Workers*, 475 U.S. 643, 649 (1986); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("The question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter.").

In such cases, the court examines the underlying contract to determine whether the parties have agreed to commit the question of arbitrability to the arbitrator. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70. ("An agreement to arbitrate a gateway issue is simply an additional antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."); *see Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528, 202 L. Ed. 2d 480 (2019)

11

("When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract.").

The DRP states that "[t]he arbitrator will have the authority to determine whether a dispute is arbitrable and whether it has been timely filed and pursued under the DRP and any applicable laws." (**M.I. Decl. Ex. 1**, p. 7). Thus, the parties have clearly and unmistakably provided that the arbitrator should decide the gateway issues of whether an enforceable agreement exists and whether that agreement is applicable to the claims raised by Plaintiff. Based on the United States Supreme Court's controlling decision in *Rent-A-Center, Henry Schein*, and the above authority, any challenges to the enforceability or validity of the DRP must be submitted to arbitration. On this basis alone, the Court should compel arbitration of Plaintiffs' claims. *See, e.g., S. Jersey Sanitation Co., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 840 F.3d 138, 144 (3d Cir. 2016) (reversing denial of motion to compel and enforcing agreement to arbitrate); *Eisenbach v. Ernst & Young U.S. LLP*, No. CV 18-1679, 2018 WL 5016993, at *4 (E.D. Pa. Oct. 16, 2018) (granting motion to compel, stating that "the delegation clause is valid and issues of arbitrability shall be determined by the arbitrator"); *Colon v. Conchetta, Inc.*, No. CV 17-0959, 2017 WL 2572517, at *3 (E.D. Pa. June 14, 2017) (granting motion to compel when "there is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability").

12

Even if the Court retains authority to determine the "gateway" issues, the Court should compel arbitration because (as explained below), the DRP is valid and enforceable under the Federal Arbitration Act ("FAA") and Pennsylvania contract law, and Plaintiffs' claims fall under the broad scope of the DRP.

### C.   Enforcement of the Dispute Resolution Process is Heavily Favored

The FAA provides that a written arbitration agreement provision is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The United States Supreme Court has specifically held that the FAA applies to contracts of employment. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001).  Thus, if an employment arbitration agreement falls under the FAA, courts must enforce its terms as they would any other contract, as the FAA "establishes a national policy favoring arbitration when the parties contract for the mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008); *Circuit City*, 532 U.S. at 119; *Quilloin v. Tenet HealthSystem Philadelphia, Inc*., 673 F.3d 221, 228 (3d Cir. 2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp*., 460 U.S. 1, 24 (1983)) ("FAA manifests 'a congressional declaration of a liberal federal policy favoring arbitration agreements....' "); *Noye v. Johnson & Johnson*, No. 1:15-CV-2382, 2020 WL 1082605, at *6 (M.D. Pa. Mar. 5, 2020) ("Pennsylvania law, like federal law, favors the enforcement of arbitration agreements.") (internal quotations and citation

omitted).   Courts must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute . . . doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960); *Moses*, 460 U.S. at 24–25 (same).

### 1.    The DRP is Valid and Enforceable, and Plaintiffs' Claims Fall Within Its Scope

The FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement, consistent with the principle that arbitration is a matter of contract.   9 U.S.C. § 4.   In determining whether to compel arbitration under the FAA, only two "gateway" issues need to be evaluated: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute.   *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 n.2 (2003); *Rent-A-Center*, 561 U.S. at 68 ("The court 'shall' order arbitration 'upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue.' ") (quoting 9 U.S.C. § 4); *Blair v. Scott Specialty Cases*, No. 00CV3865, 2002 WL 1838486, at *1 (E.D. Pa. May 7, 2002), *on reconsideration* (June 11, 2002) (dismissing plaintiff's case without prejudice and ordering the parties to arbitrate their claims pursuant to 9 U.S.C § 4).   "In the employment context, arbitration agreements will be upheld when

14

they are 'specific enough (i.e. unambiguous) to cover the employee's claims and 'the employee has *expressly* agreed to abide by the terms of [the] agreement.' " *Asberry-Jones v. Wells Fargo Bank, Nat'l Assn., et al.*, 2019 WL 2077731, at *5 (citing *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)). Because the DRP is a valid and enforceable agreement under Pennsylvania law and covers Plaintiffs' claims, arbitration is appropriate.

### a.     The DRP is a Valid and Enforceable Contract

To determine whether Plaintiffs entered into valid and enforceable agreements to arbitrate their disputes with GMRI, the DRP must be examined under Pennsylvania law regarding contract formation. *First Options of Chicago, Inc.* 514 U.S. at 944; *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002).

> Before concluding that there is a valid contract under Pennsylvania law, the court must look to: (1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration…[w]hen both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced.

*Blair*, 283 F.3d at 603 (internal quotations and citations omitted) (concluding that the arbitration agreement satisfied Pennsylvania's contract principles when plaintiff signed acknowledgment stating she read arbitration provision in handbook and agreed to submit disputes arising out of employment to arbitration).

15

In *Asberry-Jones,* the court found that these ingredients existed where the plaintiff signed an arbitration agreement as a condition of employment and when both parties agreed to be mutually bound by the arbitration agreement. 2019 WL 2077731 at *5. The same is true in the instant action. As noted above, GMRI's DRP requires the arbitration of employment-related disputes. (*See* **M.I. Decl. Ex. 1**). Plaintiffs signed acknowledgments of their receipt and review of the DRP, and they agreed, as a condition of employment, to submit any eligible disputes to the DRP as detailed above by those provisions contained therein. (*See* **M.I. Decl. Exs. 1-3**). The fact that the parties agreed to submit employment claims to arbitration could not be any clearer. *See Nelson v. Brown*, No. CV 17-3232, 2019 WL 368597, at *3 (E.D. Pa. Jan. 28, 2019) (finding that the parties entered into valid arbitration agreements when defendants executed such agreements); *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 743 (7th Cir. 2010) ("[plaintiff's] signature…objectively demonstrated his assent to the contract."); *see also Quilloin,* 673 F.3d at 237 ("parties are presumed to have knowledge of contracts they have signed"). Moreover, the DRP expressly states that "[n]either the Company nor the Employee may bring DRP-eligible disputes to court. The Company and the Employee waive all rights to bring a civil court action for these disputes." (**M.I. Decl. Ex. 1**, p. 2; *see* **M.I. Decl. Exs. 2 & 3** ("…I understand that the Company is equally bound to all of the provisions of the DRP.")). This mutual exchange of promises constitutes ample consideration to

16

support the DRP.  *See Blair*, 283 F.3d at 603; *Asberry-Jones,* 2019 WL 2077731, at

*5.  The DRP is therefore a valid contract under Pennsylvania law.

### b.      Plaintiffs' Claims Fall Within the Scope of the DRP

Here, Plaintiffs' claims against GMRI fall under the arbitral scope of the DRP.

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor

of arbitration." *Moses*, 460 U.S. 1 at 24–25.   The DRP is unambiguous and

sufficiently broad to cover Plaintiffs' claims.  The DRP applies "to all employment-

related disputes or claims brought by the Employee against the Company or the

Company against the Employee" other than specific exceptions that are identified in

the DRP. (*See* **M.I. Decl. Ex. 1**, p. 2).  It further specifies that "disputes which state

a legal claim may be submitted to Arbitration… [e]xamples of legal claims covered

by DRP include but are not limited to . . . claims that arise under the Civil Rights

Act of 1964." (*Id.* at p. 2).  Furthermore, Plaintiffs' DRP Acknowledgments state

that DRP – eligible disputes include "claims under state and federal laws relating to

harassment or discrimination…" (**M.I. Decl. Exs. 2 & 3**).

Plaintiffs bring hostile work environment and sexual harassment claims

against GMRI under Title VII, as well as the common law claim of negligent

supervision and retention.  Such employment-related legal claims are clearly and

explicitly covered by the DRP. *See Asberry-Jones*, 2019 WL 2077731 at *5 (the

clear language in the arbitration agreement requires arbitration of plaintiff's claims);

*Parker v. Briad Wenco, LLC*, No. CV 18-04860, 2019 WL 2521537, at *5 (E.D. Pa. May 14, 2019), *report and recommendation adopted,* No. CV 18-4860, 2019 WL 2516059 (E.D. Pa. June 18, 2019) (Title VII claims within agreement's scope); *Gillespie v. Colonial Life & Acc. Ins. Co.,* No. CIV.A. 08-689, 2009 WL 890579, at *9 (W.D. Pa. Mar. 30, 2009), *adhered to on reconsideration*, No. CIV A 08-689, 2009 WL 1885935 (W.D. Pa. June 30, 2009) (sexual harassment claim inextricably connected to tort claims against employer "because these claims arise from the allegedly wrongful treatment of [plaintiff] during her business relationship with [defendant]…the evidence on all of [plaintiff's] claims overlap.").

### D. Dismissal Is Appropriate; In The Alternative, The Case Should Be Stayed

When a court determines that all of a plaintiff's claims are subject to arbitration, the complaint should be dismissed. *Noye*, 2020 WL 1082605 at *7 (dismissing plaintiff's complaint when all claims were compelled to arbitration) (citing cases); *Blair*, 2002 WL 1838486 at *1 (same). Plaintiffs' claims against GMRI and Mr. Drake[8] are subject to binding arbitration.  Accordingly, dismissal is the appropriate remedy.  If the Court determines dismissal is inappropriate, it must stay the proceedings pending arbitration. *See* 9 U.S.C. § 3; *Lloyd v. Hovensa, LLC*,

---

[8] Mr. Drake joins in and adopts the Motion to Compel Arbitration and Dismiss Plaintiffs' Complaint filed by Defendants Darden Restaurants, Inc. and GMRI, Inc. d/b/a LongHorn Steakhouse.

369 F.3d 263, 269 (3d Cir. 2004).

## VI.   CONCLUSION

For the foregoing reasons, Defendants Darden Restaurant, Inc. and GMRI, Inc. d/b/a LongHorn Steakhouse respectfully request that the Court grant their Motion and enter an Order compelling Plaintiffs' compliance with the Dispute Resolution Process, including final and binding arbitration of Plaintiffs' asserted claims, and dismissing this action or in the alternative, staying this action pending the completion of arbitration.

Dated: July 28, 2020                          Respectfully submitted,

DARDEN RESTAURANTS, INC. &
GMRI, INC. D/B/A LONGHORN
STEAKHOUSE

By:  */s/ Edward H. Chyun*
One of Their Attorneys

Edward H. Chyun (admitted *pro hac vice*)
Wendy S. Buckingham (PA # 320259)
Littler Mendelson, P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA  19102.1321
267.402.3000 phone
267.402.3131 fax
echyun@littler.com
wbuckingham@littler.com
*Attorneys for Defendants*
*Darden Restaurants, Inc. and GMRI, Inc.*
*d/b/a Longhorn Steakhouse*

19

## LOCAL RULE 7.1 CERTIFICATION

I, Wendy S. Buckingham, hereby certify that in accordance with Local Rule 7.1, GMRI sought concurrence in this motion from Plaintiffs' counsel and counsel for Defendant Kyle Drake.  Counsel for Defendant Drake is filing a separate joinder to join this motion.  Plaintiffs' counsel, however, has denied concurrence in this motion.

## LOCAL RULE 7.8 CERTIFICATION

I, Wendy S. Buckingham, hereby certify that in accordance with Local Rule 7.8, this memorandum complies with the word count limit and contains 4,798 words.

## CERTIFICATE OF SERVICE

I, Wendy S. Buckingham, hereby certify that on this 28th day of July, 2020, the foregoing document was filed using the Middle District of Pennsylvania's ECF system, through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon all counsel of record.

*/s/ Wendy S. Buckingham*
Wendy S. Buckingham