# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JANE DOE 1 and JANE DOE 2,

Plaintiff,

v.

DARDEN RESTAURANTS, INC.,
GMRI, INC. d/b/a LONGHORN
STEAKHOUSE,  and KYLE DRAKE,

Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

Case No. 3:20-cv-0862-JPW

(Judge Jennifer P. Wilson)

## <u>DARDEN RESTAURANTS, INC. AND GMRI, INC.'S REPLY BRIEF IN SUPPORT OF RENEWED MOTION TO COMPEL ARBITRATION AND DISMISS PLAINTIFFS' COMPLAINT</u>

# TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION .................................................................1

II.     GMRI'S RENEWED MOTION TO COMPEL SHOULD BE
        GRANTED IN ITS ENTIRETY ..........................................3

    A.    There Is No Genuine Dispute As To Any Material Fact
              Regarding Whether The DRP Is Enforceable, Entitling GMRI
              To Summary Judgment. ...........................................3

        1.    The DRP Is Not Illusory. .........................................3

        2.    Because The DRP Is Not Illusory, The Parties Formed A
                    Valid Contract When They Agreed To Submit Covered
                    Employment-Related Disputes To Arbitration. ......................12

    B.    Plaintiffs Do Not Meet Their Burden Of Showing That The
              DRP Is Unconscionable. ..........................................13

        1.    The DRP Is Not Substantively Unconscionable. ...................14

        2.    The DRP Is Not Procedurally Unconscionable. ....................19

        3.    Should The Court Consider A Provision Of The DRP
                    Unconscionable, It Should Sever That Provision and
                    Enforce The DRP. ..............................................27

    C.    The DRP Is Not Otherwise Unenforceable As A Prospective
              Waiver of Federal Statutory Rights................................28

        1.    The DRP's Plain, Unambiguous Language Does Not
                    Support Plaintiffs' DRP Interpretation. ..................30

        2.    The Parties' Conduct Evidences Their Intent To Allow
                    Plaintiffs To Proceed To Arbitration Without Exhausting
                    Administrative Remedies.......................................34

        3.    Plaintiffs Could Have Pursued Administrative Remedies
                    Simultaneously With Arbitration...............................35

# TABLE OF CONTENTS
(CONTINUED)

PAGE

      4.    If The Court Determines That The Terms In The DRP's "Other Actions" Paragraph Are Ambiguous, The Court Should Refer The Issue To The Arbitrator. ...........................37

   D.    No Genuine Issue Of Material Fact Exists Regarding Whether Plaintiffs' Common Law Claims Fall Within The DRP's Scope. .....38

III.   CONCLUSION................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Anthony Int'l, L.P.*,
    341 F.3d 256 (3d Cir. 2003) ...................................................................26

*Alexander v. Raymours Furniture Co., Inc.*,
    No. 13–5387, 2014 WL 3952944 (E.D. Pa. Aug. 13, 2014) .............................26

*Asberry-Jones v. Wells Fargo Bank, Nat'l Ass'n*,
    No. CV 19-83, 2019 WL 2077731 (E.D. Pa. May 10, 2019).....................*passim*

*Binswanger of Pennsylvania, Inc. v. TSG Real Est. LLC*,
    217 A.3d 256 (Pa. 2019).....................................................................30

*Blair v. Scott Specialty Gases*,
    283 F.3d 595 .................................................................................*passim*

*Clymer v. Jetro Cash & Carry Enters., Inc.*,
    334 F. Supp. 3d 683 (E.D. Pa. 2018)...................................17, 35, 36

*Coulter v. Experian Info. Sols., Inc.*,
    No. CV 20-1814, 2021 WL 735726 (E.D. Pa. Feb. 25, 2021) .........................16

*Crawford v. United Servs. Auto. Ass'n Ins.*,
    No. 06-CV-00380-EWN-BNB, 2006 WL 8460352 (D. Colo. July
    10, 2006) ........................................................................................11

*Crump v. MetaSource Acquisitions, LLC*,
    373 F.Supp.3d 540 (E.D. Pa. 2019)..........................................*passim*

*Ellin v. Empire Today, LLC*,
    No. CIV.A. 11-2312, 2011 WL 3792754 (E.D. Pa. Aug. 24, 2011).................14

*Epic Sys. Corp. v. Lewis*,
    138 S.Ct. 1612 (2018).........................................................................9

*Floss v. Ryan's Family Steak House, Inc.*,
   211 F.3d 306 (6th Cir. 2000) ...............................................................................4

*Glenwright v. Carbondale Nursing Home, Inc.*,
   No. CV 3:16-0926, 2017 WL 1092541 (M.D. Pa. Mar. 23, 2017) ...................27

*Great W. Mortg. Corp. v. Peacock*,
   110 F.3d 222 (3d Cir. 1997) ...............................................................16, 19, 25

*Grzanecki v. Darden Rests.*,
   No. 1:19-cv-05032, 2020 WL 1888917 (N.D. Ill. Apr. 16, 2020) ...................14

*Hayes v. Reinhart Food Serv., LLC*,
   No. CV 16-2264, 2017 WL 783777 (E.D. Pa. Mar. 1, 2017) ...............18, 24, 36

*Hodges v. SCE Envtl. Grp., Inc.*,
   No. 3:11cv1410, 2012 WL 1899669 (M.D. Pa. May 24, 2012)........................17

*Hoffman v. Swift Transp. Co.*,
   No. CV 07-321-AS, 2007 WL 4268769 (D. Or. Nov. 30, 2007)......................10

*Lucey v. FedEx Ground Package Sys., Inc.*,
   305 F. App'x 875 (3d Cir. 2009)........................................................................20

*Mason v. Lowe's Companies, Inc.*,
   No. CV 19-973, 2020 WL 3574313 (W.D. Pa. June 30, 2020) ..............4, 10, 23

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
   460 U.S. 1 (1983)..................................................................................9, 11, 38

*Nelson v. Watch House Int'l. L.L.C.*,
   815 F.3d 190 (5th Cir. 2016) ..............................................................................4

*Nino v. Jewelry Exch., Inc.*,
   609 F.3d 191 (V.I. June 15, 2010)....................................................................25

*Noye v. Johnson & Johnson and Kelly Servs., Inc.*,
   No. 15-cv-2382, 2017 WL 5135191 (M.D. Pa. November 6, 2017)............14, 24

*Parker v. Briad Wenco, LLC*,
   No. CV 18-04860, 2019 WL 2521537 (E.D. Pa. May 14, 2019)......................27

*Porreca v. Rose Grp.*,
   No. CIV.A. 13-1674, 2013 WL 6498392 (E.D. Pa. Dec. 11, 2013) ...........*passim*

*Quilloin v. Tenet HealthSystem Philadelphia, Inc.*,
   673 F.3d 221 (3d Cir. 2012) ........................................................*passim*

*Ranson v. Securitas Sec. Servs. USA, Inc.*,
   No. 1:18-CV-105-SNLJ, 2018 WL 4593707 (E.D. Mo. Sept. 25,
   2018) ..........................................................................................10

*Reading Health Sys. v. Bear Stearns & Co.*,
   900 F.3d 87 (3d Cir. 2018) ...............................................................31

*Richards v. Am. Acad. Health Sys., LLC*,
   No. 2:20-CV-00059-KSM, 2020 WL 2615688 (E.D. Pa. May 22,
   2020) ..........................................................................................24

*Salley v. Option One Mortg. Corp.*,
   925 A.2d 115 (Pa. 2007) .............................................................14, 20

*Seme v. Gibbons, P.C.*,
   No. CV 19-857, 2019 WL 2615751 (E.D. Pa. June 26, 2019).....................20, 25

*Singh v. Uber Techs. Inc.*,
   939 F.3d 210 (3d Cir. 2019) .............................................................37

*Smith v. Creative Res., Inc.*,
   No. CIV. A. 97-6749, 1998 WL 808605 (E.D. Pa. Nov. 23, 1998)...................24

*Socko v. Mid-Atl. Sys. of CPA, Inc.*,
   633 Pa. 555 (2015)..........................................................................13

*Somerset Consulting, LLC v. United Capital Lenders, LLC*,
   832 F. Supp. 2d 474 (E.D. Pa. 2011)...................................................25

*Standard Venetian Blind Co. v. Am. Empire Ins. Co.*,
   469 A.2d 563 (Pa. 1983)...................................................................24

*Todd Heller, Inc. v. United Parcel Service, Inc.*,
   754 A. 2d 689 (Pa. Super. Ct. 2000).....................................................20

*Tose v. First Pennsylvania Bank, N.A.*,
   648 F.2d 879 (3d Cir.1981) ...............................................................23

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
 363 U.S. 574 (1960) ............................................................................38

*Williams v. Medley Opportunity Fund II, LP*,
 965 F.3d 229 (3d Cir. 2020) ......................................................*passim*

*Yearwood v. Dolgencorp, LLC*,
 No. 6:15-CV-00898-LSC, 2015 WL 5935167 (N.D. Ala. Oct. 13,
 2015) ..................................................................................................21

**Statutes**

Civil Rights Act of 1964 .....................................................................33, 34

## I.    INTRODUCTION

Plaintiffs' Brief in Opposition to Defendants' Renewed Motion to Compel Arbitration ("Opposition" or "Opp.") (*see* Dkt. No. 51) does not change the necessary legal conclusion that Darden Restaurants, Inc.'s and GMRI's (collectively referred to as "GMRI") Dispute Resolution Process ("DRP")[1] is binding, valid, and enforceable.  In their Opposition, Plaintiffs do not dispute that each acknowledged and agreed to the DRP via written signatures.  Nor do they challenge the well-settled principle that the parties' mutual promises to arbitrate claims constitute consideration.  Instead, they only focus on whether consideration exists via continued employment or as a condition of employment – which are irrelevant, as consideration exists already.

Unable to challenge the formation of a contract, Plaintiffs assert several contract defenses, including that the DRP is illusory, unconscionable, and in violation of public policy.  Plaintiffs also contest whether their tort claims fall within the scope of the DRP.  Such arguments, however, belie the facts and do nothing to the fact that DRP is valid and binding and the Court should compel arbitration –

---

[1] *See* Dkt. No. 46-3 at GMRI000268-301, M.P. Decl. Exhibit 3, Darden's 2013 DRP, (referred hereafter as "2013 DRP") and Dkt. No. 46-3 at GMRI000302-318, M.P. Decl. Exhibit 4, April 2014 DRP, GMRI000302-318 (referred hereafter as "2014 DRP").  The 2013 DRP and 2014 DRP are referred collectively as "the DRP." Additionally, GMRI's reference to the DRP is inclusive of its reference to the DRP's delegation clause. (*See* 2013 DRP at GMRI000276; 2014 DRP at GMRI000310; Renewed Motion to Compel Arbitration at pp. 14-16)

especially given the mandate from the Supreme Court that arbitration agreements be read broadly and in favor of arbitration.

Specifically, the DRP is not illusory because GMRI cannot unilaterally modify its terms; any revisions to the 2013 LongHorn Team Member Handbook ("LH Handbook")[2] have no impact on the DRP, which is a separate, standalone document.  Plaintiffs' unconscionability arguments also fall flat, as Plaintiffs cannot demonstrate that the DRP is both substantively and procedurally unconscionable. Even if they could, the challenged provisions are severable.  Further, Plaintiffs' public policy argument lacks merit.  The DRP's plain language does not require Plaintiffs to exhaust administrative remedies and receive rights to sue before demanding arbitration.  And, even if Plaintiffs can somehow convince this Court that the terms Plaintiffs highlight are somehow ambiguous or confusing, the precedent is clear: contract interpretation is an issue for the arbitrator.  Finally, there is no dispute of material fact regarding whether Plaintiffs' tort claims fall within the DRP's broad scope.

In sum, the DRP is a valid and binding contract, and the Federal Arbitration Act's[3] liberal policy favoring arbitration dictates granting GMRI's Motion to

---

[2] *See* M.P. 2d Decl. Exhibit 1, GMRI000001-54.

[3] *See Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 228 (3d Cir. 2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)) ("FAA manifests 'a congressional declaration of a liberal

Compel Arbitration.  (Dkt. No. 47, hereafter referred to as the "Renewed Motion to Compel").

## II.   GMRI'S   RENEWED   MOTION   TO   COMPEL   SHOULD   BE GRANTED IN ITS ENTIRETY

### A.   There Is No Genuine Dispute As To Any Material Fact Regarding Whether The DRP Is Enforceable, Entitling GMRI To Summary Judgment.

Plaintiffs challenge whether the DRP is supported by consideration, arguing that GMRI's promise to arbitrate was illusory, thereby invalidating the DRP.  As demonstrated below, there is no genuine dispute as to any material fact regarding whether GMRI is bound by the DRP; the DRP's terms clearly bind both GMRI and Plaintiffs, and GMRI does not have "unfettered discretion" to revise the DRP.  As such, the DRP indisputably meets each contractual requirement, necessitating the conclusion that the parties formed a contract under Pennsylvania law.[4]

### 1.   The DRP Is Not Illusory.

Plaintiffs argue that the DRP is illusory because GMRI can unilaterally alter a separate document, the LH Handbook, without notice to employees. (Opp. at pp. 17-26).   In support of their argument, Plaintiffs rely heavily[5] on *Crump v.*

---

federal policy favoring arbitration agreements....' "); Renewed Motion to Compel at pp. 13-14, 16-17.

[4] *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603; Renewed Motion to Compel at pp. 17-24.

[5] Plaintiffs cite *Lomax v. Vivint Solar Dev., LLC*, which is readily distinguishable. No. 20-CV-1774-JMY, 2020 WL 6781939, at *4 (E.D. Pa. Nov. 18, 2020) (finding agreement illusory when a conditions precedent clause rendered the terms

*MetaSource Acquisitions, LLC,* 373 F.Supp.3d 540 (E.D. Pa. 2019), which is inapposite.  Furthermore, despite requesting and obtaining this Court's permission to conduct discovery into this issue, Plaintiffs do not offer <u>any</u> evidence, much less present a dispute of material fact, supporting their position.

As demonstrated below, the LH Handbook and DRP are two separate documents:  the LH Handbook is a set of guidelines covering Plaintiffs' at-will employment and the DRP is a contract between the parties regarding dispute resolution of employment-related claims.  The terms of one have no impact on the other.   Plaintiffs' reliance on *Crump* is misleading – especially since the two cases decided subsequent to *Crump* demonstrate that GMRI's Renewed Motion to Compel Arbitration should be granted.  *See Mason v. Lowe's Companies, Inc.*, No. CV 19-973, 2020 WL 3574313, at *3 (W.D. Pa. June 30, 2020)[6] (granting employer's motion to compel arbitration, holding "[*Crump*], the primary case cited by Plaintiff, inapposite."); *Asberry-Jones v. Wells Fargo Bank, Nat'l Ass'n*, No. CV 19-83, 2019 WL 2077731 at *4 (E.D. Pa. May 10, 2019) (granting employer's motion to compel arbitration, stating "[t]he *Crump* case is readily distinguishable").  There is therefore

unenforceable against defendant unless such conditions were met).   Plaintiffs additionally cite to *Floss v. Ryan's Family Steak House, Inc.,* 211 F.3d 306, 316 (6th Cir. 2000) and *Nelson v. Watch House Int'l. L.L.C.*, 815 F.3d 190 (5th Cir. 2016), but neither case is applicable because both involve defendants who reserved the right to unilaterally change agreements without notice to employees. *See also Blair*, 283 F.3d at 604 (distinguishing *Floss*).

[6] Unpublished cases attached as **<u>Exhibits 2-23</u>**.

no basis to determine that the DRP is illusory.

>   **a.      The DRP Is A Discrete Document Separate And Apart From The LH Handbook.**

Plaintiffs' argument hinges on their unsupported assertion that "the [LH] Handbook <u>establishes</u> Darden's DRP program." (Opp. at p. 17) (emphasis added). Plaintiffs, after requesting that they be allowed to conduct discovery, took no discovery on this issue and merely rely on their interpretation of a single paragraph referencing the DRP:

> **Addressing Workplace Issues:**
> **The Open Door and DRP**
>
> Essential to our values of Respect and Caring, and Integrity and Fairness is a commitment to open and honest communication. If you ever have a workplace issue or dispute, your first and fastest step is to use the **Open Door** to talk to one of your restaurant managers, your Director of Operations, Managing Director/Regional Vice President, Senior Vice President or the Employee Relations Department. Any of these people will listen to you and help address your concern before it becomes too much of a problem. That is because an open and honest exchange by the people closest to the problem provides the best insight and opportunity for solving it. The Open Door also guarantees you can discuss any issue without fear of retaliation. If the Open Door does not initially resolve your issue, however, you are free to continue with the Dispute Resolution Process (DRP), as outlined in the DRP handbook and on the DRP poster posted in your restaurant. DRP consists of four steps: (1) The Open Door, (2) Peer Review, (3) Mediation and (4) final and binding Arbitration. You should have received a DRP handbook with additional details during your orientation. For an additional copy of the handbook, or more information, you should see your General Manager/ Managing Partner or call the DRP Department.

(LH Handbook at p. 21).  The plain language of this paragraph, however, forecloses Plaintiffs' interpretation.

First, the section's focus is on Step One- Open Door.  Open Door is addressed in the title, bolded in the paragraph, and discussed at length.  *Id.*  The remaining

three DRP steps, by contrast, are mentioned once.  *Id*.  The paragraph also explicitly references the DRP as a separate document.  It refers the employee to "the Dispute Resolution Process (DRP), **as outlined in the DRP handbook** and on the DRP poster posted in your restaurant…[y]ou should have received **a DRP handbook** with additional details during your orientation…[f]or an additional **copy of the handbook**…" *Id.* (emphasis added).

The parties' conduct supports the fact that the DRP is a separate document. The evidence is undisputed that Plaintiffs signed multiple documents acknowledging both their receipt and agreement to the DRP.  (Dkt. No. 46-3 at Exs. 1-2, 5-7; Dkt. No. 46-4 Joint Stipulation Regarding Documents Signed by Jane Doe Plaintiffs). Additionally, when GMRI modifies the DRP, it does not unilaterally implement such modification without notice or at its unfettered discretion – like it may do for a LH Handbook.  Rather, it has its employees sign the new, modified DRP, as evidenced by Doe 1's execution of the revised DRP.  *See Blair v. Scott Specialty Gases,* 283 F.3d 595 (3d Cir. 2002)*; Dkt. No. 46-3 at GMRI000378, M.P. Decl. Exhibit 6; M.P. 2d Decl. at ¶¶ 6-10.*  Thus, to say this paragraph *establishes* the DRP flatly contradicts the paragraph's unambiguous terms and the parties conduct, and would render an absurd result.  *See infra.*

Because the DRP is not contained within the LH Handbook and is a separate document which both Plaintiffs acknowledged and agreed to multiple times, it

follows that it is not subject to the LH Handbook's amendment provisions, rendering Plaintiffs' remaining arguments focusing on the LH Handbook's terms wholly irrelevant to the issue of whether the DRP is illusory.  (Opp. at pp. 17-25).

      **b.**     ***Crump* Is Distinguishable On Several Grounds.**

In addition to the LH Handbook's explicit references to the DRP as a separate, discrete document, there are several material differences between the facts at issue in *Crump* and the facts at issue here that warrant enforcing the DRP.  In *Crump,* the employer "agree[d] that the arbitration provision on the final page of the employee handbook contains [the employer's] promise to arbitrate." 373 F. Supp. 3d at 546. Specifically, the arbitration provision appeared in the handbook under a heading "ACKNOWLEDGMENT AND AGREEMENT" wherein the employee acknowledged the employee handbook, including the arbitration provision.  *Id.* Here, as explained, DRP is not contained within the LH Handbook.  Rather, it is explained in the LH Handbook and referenced as a separate document – which both Plaintiffs admittedly signed.   Indeed, unlike the handbook in *Crump*, the LH Handbook explicitly references the DRP as a standalone handbook numerous times. Moreover, unlike the single acknowledgment at issue in *Crump* referencing the arbitration agreement, the LH Handbook and the DRP have separate acknowledgments.  (*Compare* LH Handbook at GMRI000054 to 2013 DRP at GMRI000280 and 2014 DRP at GMRI000314).   The LH Handbook

Acknowledgment makes no mention of the DRP because the DRP has its own acknowledgment on page 11. (*Id.*).

Next, the employee handbook in *Crump* contained language allowing the employer to modify the handbook policies (including the arbitration agreement contained therein) with "unfettered discretion":

> [T]he Company reserves the right to revise, delete, and add to the provisions of this Employee Handbook. All such revisions, deletions, or additions must be in writing and must be signed by the President of the Company…[E]xcept for the policy of at-will employment, terms and conditions of employment with the Company may be modified at the sole discretion of the Company with or without cause or notice at any time.

373 F.Supp.3d at 543. Here, by contrast, the Opposition identifies <u>one sentence</u> that Plaintiffs argue allows GMRI to unilaterally modify the DRP: "[T]he DRP may be updated from time to time as required by applicable law." (Opp. at p. 25; 2013 DRP at GMRI000269; 2014 DRP at GMRI000303). That sentence does not equate to the myriad of factors considered in *Crump*, and even Plaintiffs seem to acknowledge this, failing to cite to any authority standing for the argument that the DRP's language renders the agreement unenforceable.

Going a step further, this sentence is not discretionary when viewed in context. Immediately preceding it, the DRP states that it "is always to be used and interpreted consistently with applicable law" and that if any provision is in conflict with the applicable law, "that provision may be severed or revised." (2013 DRP at

GMRI000269; 2014 DRP at GMRI000303).  Thus, the DRP's modifications are not

triggered until the DRP is required to be changed "by applicable law."fff[7] Because

modifying the DRP is dependent upon a change in the law, it does not confer an

"unfettered right" on GMRI to alter its terms without notice to employees.

Additionally, the LH Handbook's Acknowledgment states that the LH

Handbook "represents guidelines only" and is "not a contract." (LH Handbook at

GMRI000002, 18, 54).  The DRP, on the other hand, is an <u>agreement</u> between the

parties.  (2013 DRP at GMRI000269, 277, 280-281 and 2014 DRP at GMRI000303,

312, 314-315 (referring to the DRP as an "agreement")).  Thus, the LH Handbook's

employee *guidelines* may be modified in ways that are inapplicable to the parties'

*agreement* to submit disputes via the DRP.

### c.   The Opinions In *Ashberry-Jones* And *Moses*, As Well As Several Opinions From Other Jurisdictions, Are Instructive.

Two cases decided after *Crump* further highlight the DRP's validity.   In

*Asberry-Jones* , the plaintiff, like Plaintiffs here, argued that the employee handbook

---

[7] The Supreme Court's 2018 decision in *Epic Sys. Corp. v. Lewis*, 138 S.Ct. 1612 (2018) offers an example.  In *Epic Systems*, the Court decided the issue of whether "employees and employers [should] be allowed to agree that any disputes between them will be resolved through one-on-one arbitration" versus allowing employees to bring claims in class or collective actions.  *Id.* at 1619.  The Court held that arbitration agreements waiving class and collection actions could be enforced.  *Id.* at 1623.  The DRP contains a clause exempting employees from bringing their claims as class or collective actions.  (2013 DRP at GMRI000272; 2014 DRP at GMRI000306).  Had *Epic Systems* been decided in favor of finding such clauses unenforceable, that holding would have triggered a modification of the DRP.

referenced the arbitration agreement and because the defendant retained discretion to modify the handbook, the arbitration agreement could be illusory.   2019 WL 2077731, at *3 .   The plaintiff relied solely on *Crump*, which the court deemed "readily distinguishable" because the plaintiff failed to "cite language in the Arbitration Agreement, offer letter, or employee handbook similar to the language at issue in *Crump*." *Id.* at *4.  The arbitration agreement's language did not contain similar language, and whether the employee handbook contained similar language that *may* deem the arbitration agreement illusory was "[p]ure speculation." *Id.*

In *Mason*, the arbitration agreement at issue lacked the explicit verbiage noted in *Crump* allowing the defendant to make modifications without notice.  2020 WL 3574313, at *3.  Instead, there "is no indication that [the defendant] is not bound by the same terms of the Arbitration Agreement, nor has the right to unilaterally make any changes to the Agreement." *Id.* The court upheld the agreement, finding the defendant's "agreement also to be bound by the arbitration clause to be sufficient consideration under the law…". *Id.*

In addition to these cases, other courts have upheld arbitration agreements against similar challenges.  *See, e.g.*, *Ranson v. Securitas Sec. Servs. USA, Inc.*, No. 1:18-CV-105-SNLJ, 2018 WL 4593707, at *4 (E.D. Mo. Sept. 25, 2018) (finding plaintiff's illusory argument had no merit when argument related to employee handbook, which stood separate and apart from the arbitration agreement); *Hoffman*

*v. Swift Transp. Co.*, No. CV 07-321-AS, 2007 WL 4268769, at *3 (D. Or. Nov. 30, 2007) (granting motion to compel when presented with illusory argument, determining that "Defendant's ability to change its personnel policies does not make the employment contract illusory…Defendant did not modify the terms of the arbitration agreement…"); *Crawford v. United Servs. Auto. Ass'n Ins.*, No. 06-CV-00380-EWN-BNB, 2006 WL 8460352, at *7 (D. Colo. July 10, 2006) (finding arbitration agreement not illusory when agreement "presented as a discrete document containing rules and discrete document containing a plain-language explanation of the rules…[i]t is patently clear that the [arbitration agreement's] clause does not appear in a handbook subject to a disclaimer [that] neither the handbook nor its contents were meant to form a contract.")

Thus, the unambiguous language of the DRP and the LH Handbook confirm that GMRI's ability to modify the LH Handbook's provisions does not carry over to its ability to modify the DRP. As shown, they are two separate documents: the LH Handbook is a set of guidelines covering Plaintiffs' at-will employment and the DRP is a contract between the parties regarding dispute resolution of employment-related claims. Put another way, the LH Handbook could delete the Open Door section entirely, and the DRP would still exist unchanged. (**Exhibit 1 to Reply Brief**, Second Declaration of Mary Pompilus ("M.P. 2d Decl.") at ¶ 10). As such, and as indicated by *Ashberry-Jones* and *Moses*, *Crump*'s holding should be limited to a

narrow set of facts.  Where, as here, the arbitration agreement is not contained within the employee handbook, and where the explicit wording permitting alteration of an agreement without notice is absent, *Crump*'s holding should not apply.  As such, GMRI's promise to proceed via the DRP is not illusory and the DRP should be enforced because, as explained below, it is supported by adequate consideration.

2. **Because The DRP Is Not Illusory, The Parties Formed A Valid Contract When They Agreed To Submit Covered Employment-Related Disputes To Arbitration.**

Plaintiffs do not dispute that they manifested an intention to be bound by the DRP or that the DRP's terms are sufficiently definite to be enforced.[8]  Accordingly, the parties have formed a valid and binding contract.

Doe 1[9] separately argues that there was no adequate consideration because continued employment is insufficient to constitute adequate consideration.  (Opp. at pp. 27-30).  Specifically, she alleges that a genuine issue of material fact exists concerning what date she signed the January 2013 DRP because she contends that she signed it on January 14, 2014, three days after GMRI hired her. (Opp. at p. 27).  Assuming this fact is true,[10] the DRP is still supported by two forms of consideration.

---

[8] For facts, arguments and authority supporting the first two contractual elements, *see* Renewed Motion to Compel Arbitration at pp. 19-22.

[9] Doe 2 does not challenge consideration, thereby conceding that she and GMRI formed a contract under Pennsylvania law.

[10] For purposes of this Reply, GMRI assumes that the facts stated in Plaintiffs' declarations are true.  However, GMRI does not waive its right to submit additional evidence should this matter proceed to hearing.

Doe 1 does not dispute, nor could she, the well-settled Third Circuit precedent that the mutual exchange of promises to arbitrate disputes constitutes valid consideration. *See Blair*, 283 F.3d at 603; *Asberry-Jones,* 2019 WL 2077731, at *5. The DRP is also supported by Doe 1's continued employment, and Doe 1 makes no effort to distinguish GMRI's authority on this point.[11] Instead, she again reverts back to *Crump*, citing a case referenced therein in relation to a non-compete agreement. 373 F. Supp. 3d at 548 (discussing *Socko v. Mid-Atl. Sys. of CPA, Inc.*, 633 Pa. 555, 126 (2015) in the context of analyzing non-competes and handbooks to determine whether continued employment constituted consideration in the context of a handbook, not an arbitration agreement). This argument is misleading and ignores the clear law from this circuit. Therefore, it is clear that the DRP is supported by adequate consideration and should be upheld.

### B.   Plaintiffs Do Not Meet Their Burden Of Showing That The DRP Is Unconscionable.

Plaintiffs next argue that the DRP is substantively and procedurally unconscionable. (Opp. at pp. 30-39). Under Pennsylvania law,[12] an arbitration

---

[11] *See* Renewed Motion to Compel Arbitration at pp. 23-24 (citing *Blair*, 283 F.3d at 604 n. 3; *Hoffman v. Compassus*, No. CV 18-0776, 2019 WL 1791413, at *7 (E.D. Pa. Apr. 23, 2019) (collecting cases); *Alexander v. Raymours Furniture Co., Inc.*, No. 13–5387, 2014 WL 3952944, *5 (E.D. Pa. Aug. 13, 2014); *Grant v. Philadelphia Eagles LLC*, No. 09-1222, 2009 WL 1845231, *5 and *14 (collecting cases) (E.D. Pa. June 24, 2009)).

[12] "[I]n determining unconscionability, we must use principles of Pennsylvania law, to the extent that such law is not displaced by the FAA." *Quilloin*, 673 F.3d at 230

agreement is unconscionable only if it is *both* substantively and procedurally unconscionable. *Noye v. Johnson & Johnson and Kelly Servs., Inc.,* No. 15-cv-2382, 2017 WL 5135191 at *7 (M.D. Pa. November 6, 2017) (citing *Zimmer v. CooperNeff Advisors, Inc.*, 523 F.3d 224, 230 (3rd Cir. 2008)); *Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 119-20 (Pa. 2007). <u>Plaintiff "has the burden</u> to demonstrate that the agreement is <u>both</u> procedurally and substantively unconscionable." *Ellin v. Empire Today, LLC*, No. CIV.A. 11-2312, 2011 WL 3792754, at *5 (E.D. Pa. Aug. 24, 2011) (citing *Salley,* 925 A.2d at 119–20) (emphasis added). Because the DRP is neither substantively nor procedurally unconscionable, it should be upheld as a valid and enforceable contract. *Cf. Grzanecki v. Darden Rests.*, No. 1:19-cv-05032, 2020 WL 1888917 (N.D. Ill. Apr. 16, 2020) (granting motion to compel arbitration when plaintiff's unconscionability arguments did not affect the issue of contract formation and were without merit).

### 1.    The DRP Is Not Substantively Unconscionable.

Plaintiffs have not met their burden to demonstrate that the DRP is substantively unconscionable, thereby ending the unconscionability inquiry. *See Porreca v. Rose Grp.*, No. CIV.A. 13-1674, 2013 WL 6498392, at *16 (E.D. Pa. Dec. 11, 2013) (granting renewed motion to compel arbitration, stating that

---

(internal quotations and citations omitted).

"[s]ubstantive unconscionability remains a necessary condition to invalidating an arbitration agreement and it is not present here.  Therefore, sliding-scale or not, Plaintiff cannot sustain his burden of demonstrating substantive unconscionability.").  "A contract or provision is substantively unconscionable where it unreasonably favors the party asserting it… An arbitration agreement cannot be construed as substantively unconscionable where it does not alter or limit the rights and remedies available to a party in the arbitral forum." *Quilloin*, 673 F.3d at 230 (internal quotations and citations omitted).

> ### a.     Plaintiffs' Challenges To The DRP's Terms Fail To Demonstrate Substantive Unconscionability.

Plaintiffs argue, without support, that the DRP's pre-arbitration exhaustion[13] and timeliness requirements are substantively unconscionable for the same reasons they argue such provisions operate as prospective waivers of federal statutory rights. (Opp. at 35-36).

Plaintiffs cloak arguments focusing on interpreting the DRP's terms (i.e., the "Other Actions" section, the four-step, tiered structure, and the one-year temporal limitation) and on how an arbitrator may decide their claims once in arbitration[14] as

---

[13] For GMRI's reply to Plaintiffs' argument that the DRP and delegation clause prevent Plaintiffs from bringing federal statutory claims in arbitration, *see supra*.

[14] *See, e.g.,* Opp. at pp. 35-36 ("…an employee who invokes the DRP…risks being foreclosed from timely pursuing her dispute **in arbitration**…"); *Id.* at p. 36 n. 6 ("[T]he Delegation Clause would **instruct the arbitrator** to dismiss the action since it was not timely pursued…); *Id.* at p. 37 (the DRP "**directs the arbitrator** to dismiss

arguments concerning substantive unconscionability.   As Plaintiffs' lack of applicable case law indicates, such elements do not go to whether the DRP is unconscionable, and courts have delegated them to arbitrators.  *See, e.g., Great W. Mortg. Corp. v. Peacock*, 110 F.3d 222, 230 (3d Cir. 1997) (finding claims regarding waiver of jury trial, the statute of limitations, and whether plaintiff waived rights under state law including whether plaintiff waived right to punitive damages under a New Jersey anti-discrimination statute to be issues for the arbitrator); *Quilloin,*, 673 F.3d at231  (citing *PacifiCare Health Sys. Inc. v. Book*, 538 U.S. 401, 406–07 (2003)) ("[t]he Supreme Court has clearly established that ambiguities in arbitration agreements must be interpreted by the arbitrator."); *Blair*, 283 F.3d at 611 (deferring question of whether plaintiff's complaint should be dismissed because plaintiff failed to file for arbitration within one year temporal limitation in arbitration agreement to the arbitrator); *See Coulter v. Experian Info. Sols., Inc.*, No. CV 20-1814, 2021 WL 735726, at *5 (E.D. Pa. Feb. 25, 2021) (consistent with the agreement's delegation clause, the court "may not consider the parties' remaining arguments, including Plaintiff's arguments concerning the terms of the agreement…").

Even if the Court considers these arguments, Plaintiffs offer no authority

---

a claim if the claim is not timely pursued from one step of the DRP to the next.") (emphasis added).

supporting the inference that such terms render the DRP substantively unconscionable. Courts, in fact, have found the opposite, upholding tiered, step-by-step structures and one-year temporal limitations as enforceable contract provisions. *See, e.g., Quilloin* 673 F.3d at 234 (upholding arbitration agreement requiring plaintiff to move through steps one through five, culminating in arbitration, and finding one-year limitation clause reasonable); *Porreca,* 2013 WL 6498392 at \*16 (finding that a tiered system for raising and resolving work place issues and allowing employees to skip steps not substantively unconscionable); *Hodges v. SCE Envtl. Grp., Inc.*, No. 3:11cv1410, 2012 WL 1899669, \*4 (M.D. Pa. May 24, 2012) (upholding one-year limitations period); *see also Clymer v. Jetro Cash & Carry Enters., Inc.*, 334 F. Supp. 3d 683, 696 n.7 (E.D. Pa. 2018) (noting one-year limitations period is longer than EEOC or PHRA limitations periods and is thus reasonable).

Plaintiffs also argue, again without any support, that the DRP is unconscionable because it "misrepresents material facts." (Opp. at p. 37). While such an argument is, again, properly delegated to an arbitrator, should the Court consider this argument, it is easily dismissed as fruitless.

Plaintiffs call out provisions clearly stating that the arbitrator can award the same remedies and damages as a judge or jury, in effect illustrating that the DRP does not alter or limit the rights and remedies available to the Parties in arbitration.

(Opp. at p. 38).  Plaintiffs also argue that the DRP's explicit cost provisions conflict with the DRP Overview (Opp. at p. 39), but the DRP could not be clearer about what costs Plaintiffs are responsible for.  (*See* 2013 DRP at GMRI000274, 276, 281; 2014 DRP at GMRI000309, 311, 315).  The provision Plaintiffs point to in the DRP Overview is true:  the DRP is more economical than filing an action in Court[15] and doing so costs Plaintiffs' nothing (i.e., GMRI pays the cost of the arbitration service and the arbitrator's fees and expenses).  Notably, Plaintiffs do not argue that they cannot pay the limited costs associated with arbitrating under the DRP.  Therefore, Plaintiffs have not shown that these provisions unreasonably favor GMRI, and they do not render the DRP unenforceable.  *See Hayes v. Reinhart Food Serv., LLC*, No. CV 16-2264, 2017 WL 783777 at *3 (E.D. Pa. Mar. 1, 2017) (finding the agreement to arbitrate valid when its language was "clear and precise, discussed the requirements and procedure for arbitrating disputes and specifically included the arbitrability of Title VII race discrimination claims").

Plaintiffs also make the conclusory argument that the PHRA provides for expanded damages and the DRP "potentially restrict[s] an arbitrator's ability to award damages under the PHRA," rendering both unconscionable.  (Opp. at p. 36).  Plaintiffs fail to cite to the DRP, which states the opposite.  The DRP gives the

---

[15] In the Middle District of Pennsylvania, the civil filing and administrative fees are $402.00.  *See* District Court Miscellaneous Fees at https://www.pamd.uscourts.gov/district-court-miscellaneous-fees.

arbitrator "the same authority as a court of law to grant requested relief." (DRP at p. 8); *see also* DRP at p. 15 (Q: "Can an arbitrator award the same kind and amount of damages that a court or jury trial could?  A: "Yes."). There is no evidence that the DRP restricts Plaintiffs' recovery under the PHRA.  Furthermore, as previously stated, such an argument is appropriate for the arbitrator.  *See, e.g., Great W. Mortg. Corp.,* 110 F.3d at 230.  At the end of the day, Plaintiffs' argument that the DRP is substantively unconscionable is premised upon the unknown – what they fear may happen at arbitration and not the actual agreement and provisions of the DRP – which is clearly fair, and critically, provides all remedies available to them under the law.   Therefore, Plaintiffs have not met their burden to show that the DRP is substantively unconscionable.

### 2.    The DRP Is Not Procedurally Unconscionable.

Because the DRP is not substantively unconscionable, the Court need not evaluate Plaintiffs' arguments concerning procedural unconscionability because even if the Court determines the DRP is procedurally unconscionable, the DRP is not invalid.  (*See supra*).   Nevertheless, GMRI briefly addresses Plaintiffs' arguments on this point.

"A contract is procedurally unconscionable where 'there was a lack of meaningful choice in the acceptance of the challenged provision.' " *Quilloin*, 673

F.3d at 235 (quoting *Salley,* 925 A.2d at 119).  Plaintiffs rely almost exclusively[16] on *Porreca,* a case that ultimately grants the defendant's motion to compel arbitration. 2013 WL 6498392 at *16.  While the court in *Porreca* determined that the arbitration agreement was procedurally unconscionable, there are several distinguishing factors that necessitate a different result here.

At the outset, Plaintiffs contend that the DRP is procedurally unconscionable because it is a contract of adhesion.  However, even if true (which it is not) - "merely because a contract is a contract of adhesion does not automatically render it unconscionable and unenforceable." *Todd Heller, Inc. v. United Parcel Service, Inc.*, 754 A. 2d 689, 700 (Pa. Super. Ct. 2000); *Salley,* 925 A.2d at 125-126 (suggesting that not all contracts of adhesion are procedurally unconscionable).  In considering whether the arbitration agreement was procedurally unconscionable, the court in *Porreca* analyzed several factors: "the take-it-or-leave-it nature of the standardized form of the document, the parties' relative bargaining positions, and the degree of economic compulsion motivating the adhering party." 2013 WL 6498392 at *7 (quoting *Quilloin*, 673 F.3d at 236-36).  As shown, the DRP is not procedurally

---

[16] Plaintiffs also reference *Lucey v. FedEx Ground Package Sys., Inc.*, 305 F. App'x 875 (3d Cir. 2009), but that case is easily distinguishable.  *See Seme v. Gibbons, P.C.*, No. CV 19-857, 2019 WL 2615751, at *4 n.2 (E.D. Pa. June 26, 2019) (distinguishing *Lucey* because the plaintiffs in that case were presented with arbitration agreements after making financial commitments to their jobs by leasing delivery trucks).

unconscionable because, unlike the plaintiff in *Porreca*, there was not a lack of meaningful choice in Plaintiffs' acceptance of the DRP.

Plaintiffs first argue that the DRP is a take-it-or-leave-it agreement because of the circumstances under which they signed. (Opp. at pp. 31-33; Doe 1 Decl. at ¶¶ 7-22; Doe 2 Decl. at ¶¶ 7-16).  However, unlike the plaintiff in *Porreca*, Plaintiffs do not indicate that they were not afforded time to review the 2013 DRP. 2013 WL 6498392 at *8.  Plaintiffs do not allege, for instance, that they were somehow prevented from reading the 2013 DRP, from asking questions, or for seeking additional time. *Cf. Yearwood v. Dolgencorp, LLC*, No. 6:15-CV-00898-LSC, 2015 WL 5935167, at *3 (N.D. Ala. Oct. 13, 2015) ("If [plaintiff] felt rushed or hurried into signing the agreement, she could have refused to sign it until she had time to read it or she could have asked for more time.  There are no indications that she requested more time to read the agreement or that any such request was refused.").

By signing the DRP, Plaintiffs agreed they were given the chance to read and that they understood the DRP.  Plaintiffs now allege the opposite.  (*See* Dkt. No. 51-7, Jane Doe 1 August 10, 2020 Declaration ("Doe 1 Decl.") at ¶¶ 11-14; Dkt. No. 51-19, Jane Doe 1 March 30, 2021 Declaration ("Doe 1 2d Decl.") at ¶ 15; Dkt. No. 51-13, Jane Doe 2 August 11, 2020 Declaration ("Doe 2 Decl.") at ¶¶ 14-17).

Regarding Doe 1's execution of the 2014 DRP, she attests that "Mr. Scanlon did not give me the opportunity to read the DRP signature page, and did not explain

the purpose of the DRP signature page…I was not provided with a copy of the August 2014 DRP before I signed the agreement's signature page…". (*See* Doe 1 2d Decl. at ¶¶ 14, 18).  While the circumstances surrounding her execution of the 2014 DRP strain credulity, even taking them as true, Doe 1 was not a novice to the DRP.  She had, undisputedly, signed documents referencing the DRP twice prior. (*See, e.g.,* Doe 1 Employment Application and Doe 1 2013 DRP Acknowledgment). The 2014 DRP Acknowledgment states, in bold at the top, "**DISPUTE RESOLUTION PROCESS ACKNOWLEDGMENT**." (2014 DRP at GMRI000314).  Thus, even if Mr. Scanlon "did not give [Doe 1] the opportunity to read the DRP signature page," there is no indication Doe 1 was unaware of what she signed. (Doe 1 2d Decl. at ¶ 14).  In fact, she asserts that Mr. Scanlon brought her the August 2014 DRP signature page.  (*Id.* at ¶ 12).  She thus knew what the document was and does not attest that she did not understand it; the 2014 DRP Acknowledgment clearly lays out the agreement between the parties:

## DISPUTE RESOLUTION PROCESS
## ACKNOWLEDGEMENT

This agreement contains the requirements, obligations, procedures and benefits of the Dispute Resolution Process (DRP). **I acknowledge that I have received and/or have had the opportunity to read this arbitration agreement. I understand that this arbitration agreement requires that disputes that involve the matters subject to the agreement be submitted to mediation or arbitration pursuant to the arbitration agreement rather than to a judge or jury in court.** I agree as a condition of my employment, to submit any eligible disputes I may have to the DRP and to abide by the provisions outlined in the DRP. I understand this includes, for example, claims under state and federal laws relating to harassment or discrimination, as well as other employment-related claims as defined by the DRP. Finally, I understand that the Company is equally bound to all of the provisions of the DRP.

_____
Employee Name (please print)

_____     _____
Employee Signature                                     Date

*Melissa A. Ingalsbe*

Melissa S. Ingalsbe
Director, Dispute Resolution

(2014 DRP at GMRI000314). Doe 1 also could have asked to see a copy of the DRP booklet, asked for more time to execute the acknowledgment, or simply refused to sign. Her March 30, 2021 declaration is silent as to these points as well.

Indeed, it is well settled law that Plaintiffs' claim they didn't read the DRP or understand it – without more – does nothing to invalidate the DRP. *See Tose v. First Pennsylvania Bank, N.A.,* 648 F.2d 879, 900 (3d Cir.1981) ("Ignorance of the contents of a document or failure to read before signing is no defense to a contractual obligation under Pennsylvania law") *abrogated on other grounds by Griggs v. Provident Consumer Disc. Co.,* 459 U.S. 56, 61, 103 S.Ct. 400, 403, 74 L. Ed. 2d 225 (1982); *Mason*, 2020 WL 3574313, at *2 (dismissing argument that plaintiff did not read arbitration agreement and finding plaintiff manifested her intent to be bound

by clicking "Agree"); *Noye*, 2017 WL 5135191 at *8 (enforcing an arbitration agreement when the agreement informed the plaintiff in large, bold font of the plaintiff's agreement to arbitrate); *Smith v. Creative Res., Inc.*, No. CIV. A. 97-6749, 1998 WL 808605, at *1 (E.D. Pa. Nov. 23, 1998) (citing cases) (holding that the employer had no obligation to explain the contract and may offer a contract to a prospective employee on a take-it-or-leave-it basis); *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983) (internal quotation omitted) ("[i]n the absence of proof of fraud, failure to read [a contract] is an unavailing excuse or defense and cannot justify ... nullification of the contract or any provision thereof.").

Furthermore, "Pennsylvania courts and the Third Circuit have repeatedly opined that contracts of adhesion are generally found procedurally unconscionable because they target disadvantaged consumers. Such contracts of adhesion are 'offered to consumers of goods and services on essentially 'take it or leave it' basis.' " *Richards v. Am. Acad. Health Sys., LLC.,* No. 2:20-CV-00059-KSM, 2020 WL 2615688, at *6 (E.D. Pa. May 22, 2020) (quoting *Denlinger, Inc. v. Dendler*, 608 A.2d 1061, 1066 (Pa. Super. Ct. 1992)). Plaintiffs are not "disadvantaged consumers." By contrast, Plaintiffs are individuals applying for employment, or in the case of Doe 1 regarding the 2014 DRP, a current employee. As such, Plaintiffs were not forced to sign the DRP, but "had [their choice to either accept employment

with [GMRI] and agree to arbitrate any disputes, or find employment with someone else who did not require an agreement to arbitration." *Hayes*, 2017 WL 783777 at *2. As such, even accepting Plaintiffs' declarations as true, the DRP is not a take-it-or-leave-it agreement.

Plaintiffs additionally allege they were in weaker bargaining positions as compared to GMRI, but they cite to no facts supporting their claim.[17] (Opp. at pp. 34-35). "[M]ore than a disparity in bargaining power is needed to show that an arbitration agreement was not entered into willingly." *Great W. Mortg. Corp.,* 110 F.3d at 229; *Seme*, 2019 WL 2615751, at *5 ("And while [Plaintiffs] may have been eager for a job and had little bargaining power, contracts cannot be deemed procedurally unconscionable simply because of a disparity in bargaining power.") (internal quotations and citations omitted). Plaintiffs offer nothing relative to this factor, and the court should reject this allegation as a conclusory statement. *See Somerset Consulting, LLC v. United Capital Lenders, LLC,* 832 F. Supp. 2d 474, 488 (E.D. Pa. 2011).

Plaintiffs lastly argue that a degree of economic compulsion motived them to execute the DRP because they did not complete college with a Bachelor's degree;

---

[17] Plaintiffs reference *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 201–02 (V.I. June 15, 2010), but in that case, the plaintiff was depending upon the defendant for his immigration status and thus capacity to work. The Third Circuit also applied Virgin Islands law to the issue of unconscionability. *Id.* at 201.

they are mothers; and they were in numerous forms of debt.  (Opp. at pp. 34-35; Doe 1 Decl. at ¶¶ 4(a)-(d); Doe 2 Decl. at ¶¶ 5(a)-(j)).  Unlike the plaintiffs in *Porreca*[18] and *Alexander v. Anthony Int'l, L.P.*,[19] however, Plaintiffs do not provide any evidence that they lacked alternative employment; Doe 1 was "working part-time" (Doe 1 Decl. at ¶ 4(b)) and Doe 2 was "working for my boyfriend on an intermittent basis in the real estate industry." (Doe 2 Decl. at ¶ 5(c)).  Doe 1 further provides no support for whether similar circumstances as those alleged in her August 10, 2020 declaration were present when she executed the 2014 DRP.  Thus, the degree of economic compulsion that may have motivated Plaintiffs to sign the DRP is lower than that of the plaintiff in *Porreca* and not sufficient to find the DRP procedurally unconscionable.  Indeed, the Supreme Court and courts around the country have held arbitration agreements that are a condition of employment are valid and enforceable.[20]  Therefore, the factors weigh against finding the DRP procedurally unconscionable.

---

[18] The plaintiff in *Porreca* "needed to work" and "had offers with other restaurant chains" but there is no indication he was otherwise employed elsewhere. 2013 WL 6498392 at *9.

[19] 341 F.3d 256, 266 (3d Cir. 2003) (denying motion to compel under Virgin Islands law).  Plaintiffs in *Alexander* had "very narrow options for employment." *Id.*

[20] *See* Renewed Motion to Compel Arbitration at n. 4.

**3. Should The Court Consider A Provision Of The DRP Unconscionable, It Should Sever That Provision and Enforce The DRP.**

Should the Court determine that any challenged DRP provision is unconscionable, the Parties agreed that the provision may be severed or revised, and that the severed provision would not affect the remaining provisions of the DRP. (*See* DRP at inside page).   In Pennsylvania, "a clause can be stricken from an agreement so long as it does not constitute 'an essential part of the agreed upon exchange.' " *Glenwright v. Carbondale Nursing Home, Inc.*, No. CV 3:16-0926, 2017 WL 1092541, at *7 (M.D. Pa. Mar. 23, 2017) (quoting *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 214 (3d Cir. 2003)).   In the context of arbitration agreements, essential parts of the agreement involve settling disputes; the remaining provisions such as those involving costs may be severed. *Id.*   Thus, "any argument that the unconscionable [] provision renders the entire agreement unconscionable is legally unsound," and the Court may enforce the DRP without the unconscionable provision. *Id.; see Parker v. Briad Wenco, LLC*, No. CV 18-04860, 2019 WL 2521537, at *5–6 (E.D. Pa. May 14, 2019), *report and recommendation adopted,* No. CV 18-4860, 2019 WL 2516059 (E.D. Pa. June 18, 2019) (enforcing arbitration provision after severing two provisions plaintiff successfully argued were unenforceable).   This makes sense – given the Supreme Court's and this circuit's mandate that arbitration agreements should be read broadly in favor of arbitrations.

**C.    The DRP Is Not Otherwise Unenforceable As A Prospective Waiver of Federal Statutory Rights.**

Plaintiffs argue that the DRP creates an obligation that employees exhaust administrative remedies prior to demanding arbitration, which could have the effect of preventing employees from timely pursing DRP Step 4- Arbitration and result in dismissal of their federal statutory claims. (Opp. at pp. 8-16). "The prospective waiver doctrine in the arbitration context refers to a situation in which the parties agree that, if disputes arise between them, then they waive the right to rely on federal law. The Supreme Court has observed that such waivers violate public policy." *Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 238 (3d Cir. 2020) (finding arbitration agreement unenforceable because it limited disputes raised in arbitration to disputes brought under tribal law, acting as an impermissible prospective waiver of statutory rights). "[A]rbitration is only appropriate so long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum." *Id.* (quoting *Blair*, 283 F.3d at 605) (internal quotation marks, alterations, and citations omitted). In this case, there is no dispute that Plaintiffs have not waived any right to assert any laws in arbitration, which they could equally assert in court.

28

Plaintiffs attempt to create a contradiction where none exists by contorting and twisting the plain language of the DRP and asserting hypothetical scenarios[21] to come up with a situation where someone can potentially lose their federal claims in arbitration. Such an argument, however, cuts against the mandate that the arbitration agreement be read in favor of arbitration and ignores the rule of contact interpretation. Simply put, the parties did not intend to require Plaintiffs to waive any federal rights or require that they exhaust administrative remedies as a precondition to arbitration, as evidenced by the DRP's clear language and the parties' conduct. Alternatively, if such language is determined to be ambiguous, interpreting such language is delegated to the arbitrator. Therefore, regardless of whether the Court finds the DRP's language to be clear or ambiguous, granting GMRI's Renewed Motion to Compel is appropriate.

---

[21] Plaintiffs sought discovery on this issue, seeking the identity of any arbitrations, from January 1, 2015 to present, where GMRI claimed a plaintiff failed to exhaust administrative remedies prior to commencing arbitration. (*See* Dkt. No. 51-9, Defendants' Supplemental Responses to Plaintiffs' First Set of Interrogatories to Defendants GMRI and Darden at Interrogatory No.1.). GMRI answered, stating that "because the DRP does not require exhaustion of administrative remedies, GMRI has not moved to dismiss or preclude any claims by asserting an argument that a claimant failed to exhaust his or her administrative remedies in any arbitration proceeding involving LongHorn Steakhouse since January 1, 2015."

1.      **The DRP's Plain, Unambiguous Language Does Not Support Plaintiffs' DRP Interpretation.**

"Under the law of the forum, Pennsylvania,[22] we determine the meaning of a contract based on the language used." *Williams*, 965 F.3d at 239.  According to the Pennsylvania Supreme Court:

> The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the parties. Specifically, the intent of the parties to a contract is to be regarded as embodied in the writing itself, and, as such, the entire agreement must be taken into account in determining contractual intent.  Indeed, a reviewing court does not assume that contractual language is chosen carelessly, nor does it assume that the parties were ignorant of the meaning of the language they employed; thus, when a writing is clear and unequivocal, its meaning must be determined only by its terms.  Related thereto, before a court will interpret a provision in a statute or in a contract in such a way as to lead to an absurdity or make the statute or contract ineffective to accomplish its purpose, it will endeavor to find an interpretation which will effectuate the reasonable result intended.

*Binswanger of Pennsylvania, Inc. v. TSG Real Est. LLC*, 217 A.3d 256, 262 (Pa. 2019) (internal quotations and citations omitted).

---

[22] "To determine whether the prospective waiver doctrine applies, we must identify the law that would apply in arbitration under the agreement here, and thus what claims Plaintiffs could pursue in arbitration.  To do so, we interpret the contract.  We apply the forum's contract interpretation law, unless the contract has a choice-of-law provision." *Williams*, 965 F.3d at 238–39.  The DRP does not have a choice-of-law provision, so Pennsylvania contract interpretation law applies. *Id.*

The language at issue is located on DRP page 3 (GMRI000272):[23]

**What are the exceptions to Arbitration?**

The final step of DRP – Arbitration – is **not** available to resolve disputes:

- that do not state a legal claim under applicable law;
- that by controlling federal law cannot be subjected to mandatory arbitration; or
- that are legally required under controlling federal law to be arbitrated or resolved under a different process.

**Class, Collective and Representative Actions**

There will be no right or authority for any dispute to be brought, heard or arbitrated by any person as a class action, collective action or on behalf of any other person or entity under the DRP. The arbitrator has no jurisdiction to certify any group of current or former employees, or applicants for employment, as a class or collective action in any arbitration proceeding.

**Other Actions**

The DRP does not prevent an Employee from exercising statutorily protected rights to file any administrative charge or complaint with administrative agencies. Such administrative claims include, without limitation, claims or charges brought before the Equal Employment Opportunity Commission, the U.S. Department of Labor, and the National Labor Relations Board. Nothing in the DRP will preclude or excuse the Employee from bringing an administrative claim before any agency in order to fulfill the obligation to exhaust administrative remedies before making a claim in arbitration.

Plaintiffs, without support, attempt to argue that <u>one word</u> ("excuse") in the last sentence of the "Other Actions" section as obligating an employee to exhaust her administrative remedies before filing an arbitration demand.  (Opp. at p. 11 (bolding "excuse")).  Plaintiff then uses this misinterpretation to claim that under certain hypothetical situations, a party may be precluded from asserting an action in arbitration.

The DRP's terms should be interpreted in accordance with their ordinary meaning when there is "no reason to presume the parties meant anything other than the dictionary definition of the term." *See Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 99 (3d Cir. 2018) (interpreting "arising out of" in accordance with

---

[23] Identical language is included under the 2014 DRP's "Other Actions" section. (2014 DRP at GMRI000307).

Webster's dictionary definition).  The ordinary meaning of "excuse" is "to grant exemption or release to."  Merriam-Webster, https://www.merriam-webster.com/dictionary/excuse.  Synonyms include forgive, ignore, overlook, and pardon. *Id.*  The word preceding "excuse," "preclude," means "to make impossible by necessary consequence."  Merriam-Webster, https://www.merriam-webster.com/dictionary/preclude.  Imparting the terms' ordinary meaning, the last sentence means that nothing in the DRP makes it impossible for an employee to bring an administrative claim, nor does the DRP in any way grant an employee an exemption from, or releases the employee from any obligation to, bring a claim to exhaust administrative remedies.  Employees therefore cannot point to the DRP as justification for their decision to file or not to file a claim or charge with an administrative agency.  The DRP takes no position on that decision prior to an employee "making a claim in arbitration." (2013 DRP at GMRI000272; 2014 DRP at GMRI000307).  Nothing indicates that the DRP mandates employees exhaust their remedies before pursuing arbitration.

The terms' ordinary meaning is further supported when reviewed within the context of the DRP. *See Williams*, 965 F.3d at 239 (reviewing other language in the arbitration agreement referencing tribal law to demonstrate that the rule of decision was tribal law).  First, the "Other Actions" section is contained within the "What are the exceptions to Arbitration?" section.  By its title, this section highlights *exceptions*

to the DRP, not *requirements*. Such exceptions are captured in a bullet-point list of when arbitration is not available as well as a "Class, Collective and Representative Actions" section prohibiting claims to be arbitrated as class or collective actions. (2013 DRP at GMRI000272; 2014 DRP at GMRI000307). It is therefore reasonable to interpret the "Other Actions" section as permitting employees, as an exception to the parties' agreement that the DRP "is the sole means for resolving covered employment-related disputes" (2013 DRP at p.2), to file a claim or charge outside the DRP with an administrative agency. If exhausting administrative remedies were a requirement, it would fall under the DRP's Arbitration section, particularly the paragraph entitled "Eligibility." (2013 DRP at GMRI000275; 2014 DRP at GMRI000310). Exhausting administrative remedies is notably absent from that section.

Moreover, the DRP requires employees and GMRI to bring federal claims in arbitration. Relating to Arbitration, "[o]nly disputes which state a legal claim may be submitted," including "claims that arise under the Civil Rights Act of 1964." (*See* 2013 DRP at p. GMRI000271, 275, 280-81; 2014 DRP at GMRI000305, 310, 314-15) (referencing requirement that disputes must state a legal claim to be submitted to arbitration); 2013 DRP at GMRI000280; 2014 DRP at GMRI000314 ("I agree…to submit any eligible disputes I may have to the DRP…[including] claims under state and federal laws relating to harassment or discrimination…")). Unlike

the arbitration agreement in *Williams*, therefore, the DRP does not foreclose arbitration to federal claims but mandates that such claims be brought pursuant to the DRP.  The DRP's language, therefore, does not act as a prospective waiver of federal statutory rights.

### 2. The Parties' Conduct Evidences Their Intent To Allow Plaintiffs To Proceed To Arbitration Without Exhausting Administrative Remedies.

The parties' conduct also evidences their understanding that the DRP does not mandate exhaustion of administrative remedies prior to arbitration.  In *Beery v. Quest Diagnostics, Inc*., the court examined whether the arbitration clause was void because it prevented an administrative agency from considering the plaintiffs' claims.  953 F. Supp. 2d 531, 544 (D.N.J. 2013) (granting motion to compel arbitration).  In doing so, the court considered "[t]he parties' course of conduct," including that EEOC charges were filed; that defendants never argues plaintiffs were prohibited from doing so; and that the arbitration claim did not prevent plaintiffs from putting the EEOC on notice or from cooperating with the EEOC.  *Id.*

Similar facts are present here.  On May 30, 2019, GMRI in-house counsel Seth Rivera advised Plaintiffs' counsel via correspondence that GMRI has a DRP and that Plaintiffs agreed to submit covered employment-related claims to the DRP instead of to a court of law.  (Dkt. No. 46-3, M.P. Decl. Exhibit 12).  Mr. Rivera enclosed the DRP, Plaintiffs' signed acknowledgments, and the form Plaintiffs

needed to complete to initiate the DRP. (*Id*.).   Nothing in the correspondence mandated exhaustion of administrative remedies or even asked whether Plaintiffs exhausted any administrative remedies.   (*Id*.)   Plaintiffs did not question the interpretation of the "Other Actions" paragraph or otherwise ask whether they were required to exhaust administrative remedies.   Instead, on June 11, 2019 and August 1, 2019, Plaintiffs cross-filed charges with the EEOC and the Pennsylvania Human Relations Commission, and on March 2, 2020, the EEOC issued right-to-sue letters at Plaintiffs' requests.   (Dkt. No. 1, Complaint at ¶¶ 22-24).   Subsequently, on May 28, 2020, Plaintiffs filed their Complaint.   (*Id*.).   Plaintiffs made clear they never intended to pursue their claims via the DRP.   (*See* Dkt. No. 47-1, May 14, 2020 DRP E-mail Chain).   They filed administrative charges not because the DRP required them to, but because they sought to challenge the DRP in federal court.   *See, e.g., Beery*, 953 F. Supp. 2d at 544 n. 12 ("Filing a charge—because it may be a prerequisite to the filing of a federal court action—may be the prudent course if there is any doubt as to the validity of an arbitration agreement.") As such, the parties' conduct evidences that they understood exhausting administrative remedies was not a prerequisite to pursuing Step 4- Arbitration.

### 3.    Plaintiffs Could Have Pursued Administrative Remedies Simultaneously With Arbitration.

In a recent Eastern District of Pennsylvania case, the court upheld a one-year temporal limitation in an arbitration agreement as applied to Title VII and PHRA

claims despite the plaintiff arguing such a limitation interfered with her ability to pursue and exhaust such claims.   *Clymer,* 334 F. Supp. 3d at 694.   The court explained that, as a matter of law:

> an employee who is party to an arbitration agreement, while free to pursue administrative remedies, is not required to do so and, more importantly, her decision to pursue administrative remedies does not affect in any way her obligations under an arbitration agreement…[i]t is well-settled that such agreements are fully enforceable…[p]laintiff was and is free to [seek administrative remedies by way of the EEOC or the PHRC] without any bearing on her ability to bring such claims in arbitrations…the two processes are completely unrelated.

*Id.* at 694-695.   Here, the same conclusion is warranted.

Contrary to Plaintiffs' reading, and as explained *supra*, the DRP does not require Plaintiffs to exhaust administrative remedies before demanding arbitration. Therefore, because the DRP "does not expressly or implicitly alter any of Plaintiff[s'] rights or obligations with respect to [their] pursuit of administrative remedies with either the EEOC or the PHRC…the one-year temporal limitation period as applied to Plaintiffs' Title VII and/or PHRA claims is enforceable." *Id.* at 695-696; *see also Hayes*, 2017 WL 783777, at *2  ("No court has held that statutory Title VII claims may not be subject to an arbitration agreement.").

4.    **If The Court Determines That The Terms In The DRP's "Other Actions" Paragraph Are Ambiguous, The Court Should Refer The Issue To The Arbitrator.**

In *Beery,* the court found that the arbitration agreement's provision did not bar referral to arbitration, stressing that "Plaintiffs have, at best, raised an ambiguity…even if the Agreement were ambiguous, that would be a matter for interpretation by the arbitrator." 953 F. Supp. 2d at 544 (citing *Quillon,* 673 F.3d at 221 ("[t]he Supreme Court has clearly established that ambiguities in arbitration agreements must be interpreted by the arbitrator")).  The same conclusion is warranted here.  Should the Court determine that the "Other Actions" paragraph, including the term "excuse," is ambiguous, that issue should be delegated to the arbitrator.  Such a conclusion does not contravene the Third Circuit's holding in *Williams*, which did involve an ambiguous clause because there, "the arbitration agreement is clear that only tribal-law claims are available, and that pronouncement is enough to show that federal-law claims are unavailable." 965 F.3d at 241.

In other words, the Court should refer this matter to arbitration.  And, if in arbitration, GMRI challenges the timeliness of Plaintiffs' action – Plaintiffs are free to assert its argument based on the "Other Actions" paragraph.  Thereafter, the arbitrator applying the same law this Court would apply can determine that issue.  That is what the parties agreed to and given the Supreme Court and Third Circuit

precedent that favors arbitration – that is where such an argument belongs if it becomes an issue in this case.

Therefore, the only reasonable conclusion is that the parties intended this paragraph to allow employees to file a charge or complaint outside the DRP (as an exception to its four-tiered structure) with an administrative agency without that filing impacting the employee's ability to proceed to DRP Step Four- Arbitration. Because there is no pre-arbitration exhaustion requirement, there is no prospective waiver of statutory rights.

### D.   No Genuine Issue Of Material Fact Exists Regarding Whether Plaintiffs' Common Law Claims Fall Within The DRP's Scope.

Should the Court conclude that the DRP is a valid and enforceable agreement, then the issue of whether the DRP covers Plaintiffs' common law claims is delegated to the arbitrator.  *See Singh v. Uber Techs. Inc.*, 939 F.3d 210, 228 (3d Cir. 2019) (affirming district court's opinion that question of arbitrability was whether the parties' disputes fell within the scope of the agreement).  Should the Court determine that this issue is properly before the Court, it is clear that Plaintiffs' common law claims fall within the DRP's broad scope. *See United Steelworkers of Am. v. Warrior & Gulf Navigation Co*., 363 U.S. 574, 582–83 (1960) ("[U]nless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute…doubts should be resolved in favor of coverage."); *Moses*, 460 U.S. at 24-25 (same).

Plaintiffs allege that their tort claims against GMRI are exempted from the DRP. (Opp. at pp. 39-41). However, the DRP's clear and unambiguous language requires the parties to arbitrate all covered employment-related disputes, including Plaintiffs' tort claims that relate to harassment and discrimination. (2013 DRP at GMRI000271, 280; 2014 DRP at GMRI000305, 314).

Plaintiffs' interpretation of the DRP would result in exempting all claims supported by any federal, state or local ordinance or statue, rendering the DRP obsolete. The pertinent section reads as follows:

**What are the exceptions to DRP?**

The DRP is **not** available to resolve disputes:

    related to Workers Compensation or Unemployment Insurance benefits;

    that are legally required by controlling federal law to be arbitrated or resolved under a different process;

    claims for employee benefits under any benefit plan sponsored by the Company and covered by Employee Retirement Income Security Act of 1974 or funded by insurance, unfair competition, violation of trade secrets, any common law right or duty, or any federal, state or local ordinance or statute; or

    regarding wage rates, wage scales or benefits, performance standards or ratings, work rules, food quality and service standards, or company policies and procedures,

(2013 DRP at GMRI000271-72; 2014 DRP at GMRI000305-06). Plaintiffs cherry-pick "common law right or duty," ignoring the remaining terms in the paragraph. (Opp. at p. 40). If Plaintiffs' interpretation is correct, this paragraph would have the effect of exempting essentially *all* claims, contradicting numerous references throughout the DRP specifying that the DRP is available for resolving covered employment-related disputes, including legal claims arising under and related to

federal and state statutes.  Because Plaintiffs' interpretation would lead to an absurd result, it should be disregarded.

## III.    CONCLUSION

For the reasons set forth above and in GMRI's Renewed Motion to Compel Arbitration, GMRI respectfully requests that the Court grant its Renewed Motion and enter an Order compelling Plaintiffs' compliance with the DRP, including final and binding arbitration of Plaintiffs' asserted claims, and dismissing Plaintiffs' Complaint in its entirety.

Dated: April 14, 2021                              Respectfully submitted,

DARDEN RESTAURANTS, INC. &
GMRI, INC. D/B/A/ LONGHORN
STEAKHOUSE

By:  */s/ Jonathan L. Shaw*

Edward H. Chyun (*admitted pro hac vice*)
Jonathan L. Shaw (PA # 316882)
Littler Mendelson, P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102.1321
267.402.3000 phone
267.402.3131 fax
echyun@littler.com
jlshaw@littler.com

*Attorneys for Defendants*
*Darden Restaurants, Inc. and GMRI, Inc.*
*d/b/a Longhorn Steakhouse*

## <u>LOCAL RULE 7.8 CERTIFICATION</u>

I, Jonathan L. Shaw, hereby certify that this brief complies with the word count limit approved via Court Order (Dkt. No. 55) and contains 9,078 words.

<u>*/s/ Jonathan L. Shaw*</u>
Jonathan L. Shaw
