## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE DOE 1, *et al.*, | : | Civil No. 3:20-CV-00862 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| DARDEN RESTAURANTS, INC., *et al.*, | : | |
| | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Before the court is Defendants' renewed motion to compel arbitration. (Doc. 46.)  This action was brought by Plaintiffs Jane Doe 1 and Jane Doe 2 (collectively, "Plaintiffs") based on, inter alia, alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII").  (Doc. 1, pp. 29–53.)[1]  Defendants Darden Restaurants, Inc., GMRI, Inc., (collectively, "Defendants"), and Kyle Drake ("Drake") have moved to compel arbitration in this case, arguing that Plaintiffs' claims are subject to an arbitration agreement that they signed at the start of their employment.  The court finds that the Dispute Resolution Process ("DRP") at issue is not illusory, unconscionable, or lacking consideration, and does not prospectively waive Plaintiffs' federal statutory rights.  The court also finds that Plaintiffs' claims against Drake fall within the scope of the DRP.  Therefore, the court will grant the motion to compel arbitration.  (Doc. 46.)

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

According to the complaint, Plaintiffs are former employees of a Longhorn Steakhouse restaurant owned and operated by Defendants.  (Doc. 1, ¶ 1.)  In short, Plaintiffs allege that they were "subjected to a lengthy and escalating pattern of quid pro quo sexual advances, and sexual assaults, at the hands of the restaurant's Managing Partner, Defendant Kyle Drake, and being terminated when they eventually rejected his abusive behavior."  (*Id.* ¶ 2.)  Plaintiffs state that when they initially sought employment with Defendants, they were not highly educated, and needed the job due to their economic circumstances.  (Doc. 51-7, pp. 2–3; Doc. 51-13, pp. 2–3.)  Specifically, Jane Doe 1 was a high school graduate working part-time with four children who had just moved into a new apartment with a rent payment due in less than a month.  (Doc. 51-7, p. 2.)  Jane Doe 2 had received her associates degree in graphic design, had a part-time job with a two-year old child, had significant debt with no savings, and was behind on payments with poor credit. (Doc. 51-13, pp. 2–3.)  Jane Doe 1 was hired around January 2014, and Jane Doe 2 was hired around February 2016.  (Doc. 1, ¶¶ 25–26.)

On the basis of these facts, Plaintiffs filed a complaint on May 28, 2020 alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), and claims for negligent supervision and retention, intentional infliction of emotional distress, and assault and battery.  (Doc. 1.)  On July 28, 2020, Defendants

responded to the complaint by filing a motion to compel arbitration.  (Doc. 13.)

The court denied the motion to compel arbitration without prejudice on November

5, 2020, finding that it was not apparent from the face of the complaint that

Plaintiffs' claims were subject to a valid and enforceable arbitration agreement and

that factual development was otherwise necessary.  (Doc. 30.)  The court ordered

additional, limited discovery focused on the enforceability of the delegation clause

and the agreement as a whole, noting that "a party may rely on the same arguments

that it employs to contest the enforceability of other arbitration agreement

provisions" that it uses to challenge the arbitration agreement as a whole.  (Doc. 38

(citing *Williams v. Medley Opportunity Fund, II, LP*, 965 F.3d 229, 237 (3d Cir.

2020).)

This discovery revealed, in pertinent part, that Plaintiffs were each subject to

Defendants' DRP as a mandatory condition of their employment.  (Doc. 46-3,

p. 3.)  The parties stipulated to the fact that both Plaintiffs signed a DRP

acknowledgment form when they began their employment.  (Doc. 46-4.)  In

addition, as part of their onboarding paperwork, Plaintiffs received a copy of the

operative employee handbook.  (Doc. 51-4; Doc. 51-5.)  Both of these documents

were subject to updates.  However, Defendants' Director of Dispute Resolution

and Human Resources Compliance, Mary Pompilus, indicated that updates to the

DRP are made in writing, and that employees are notified of the updates and

provided a copy, either in writing or electronically, which they can accept either by

signing an acknowledgment form or continuing their employment.  (Doc. 56-1,

p. 3.)  Updates to this document are effective prospectively.  (*Id.*)  The most recent

update to the DRP, relevant to the time period at issue in this lawsuit, occurred in

April 2015.  (Doc. 51-16.)

On March 18, 2021, Defendants filed a renewed motion to compel

arbitration accompanied by a brief in support.  (Doc. 46.)  Drake joined in this

motion on March 19, 2021.  (Doc. 48.)  Plaintiffs filed briefs in opposition on

March 31, 2021.  (Docs. 51, 52.)  Both Defendants and Drake timely filed a reply

brief.  (Docs. 56, 59.)  Thus, this motion is ripe for review.

## JURISDICTION AND VENUE

Pursuant to 28 U.S.C. § 1331, the court has jurisdiction over claims that

arise under the laws of the United States.  Further, venue is appropriate because the

action detailed in the complaint occurred in the Middle District of Pennsylvania.

## STANDARD OF REVIEW

### A. Motion to Compel Arbitration

The Federal Arbitration Act ("FAA") provides the "body of federal

substantive law establishing . . . the duty to honor agreements to arbitrate

disputes."  *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584

F.3d 513, 522 (3d Cir. 2009).  Section 2 of the FAA states that "[a] written

provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . arising out of such contract [or] transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  Section 3 requires courts, upon motion, to stay litigation "upon being satisfied that" the issues involved are "referable to arbitration" under a written arbitration agreement.  *Id.* § 3.  The stay shall remain in effect until the arbitration, in accordance with the arbitration agreement, concludes.  *See id.*  Furthermore, under Section 4, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written [arbitration] agreement . . . may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  *Id.* § 4.

Generally, "in deciding whether a party may be compelled to arbitrate under the FAA, [courts must] consider '(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement.'"  *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (quoting *Century Indem.*, 584 F.3d at 527).  The legal standard that applies to motions to compel arbitration depends on the

circumstances.  *HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 316

(W.D. Pa. 2011).

District courts review motions to compel arbitration under the rubric of

either Rule 12(b)(6) or Rule 56 of the Federal Rules of Civil Procedure.  In

*Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764 (3d Cir. 2013), the

Court of Appeals for the Third Circuit explained that "when it is apparent, based

on 'the face of the complaint, and documents relied upon in the complaint,' that

certain of a party's claims 'are subject to an enforceable arbitration clause,' a

motion to compel arbitration should be considered under a Rule 12(b)(6) standard

without discovery's delay."  *Id.* at 776 (quoting *Somerset Consulting, LLC v.*

*United Cap. Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)).

Conversely, "if the complaint and its supporting documents are unclear regarding

the agreement to arbitrate, or if the plaintiff has responded to a motion to compel

arbitration with additional facts sufficient to place the agreement to arbitrate in

issue, then 'the parties should be entitled to discovery on the question of

arbitrability before a court entertains further briefing on [the] question [under the

Rule 56 standard].'"  *Id.* (emphasis added) (first alteration in original).  Thereafter,

if summary judgment is not warranted, the court may proceed summarily to a trial.

*Id.* (quoting 9 U.S.C. § 4).

In this case, the court found that the complaint was silent with respect to the existence of an arbitration agreement, that no documents were attached to the complaint, and that the complaint did not expressly reference any documents. (*See* Doc. 1.) Thus, in accordance with *Guidotti*, the court ordered additional, limited discovery focused on the arbitrability of this case. (Docs. 30, 38.) Specifically, the court ordered that "discovery shall be focused on the enforceability of the delegation clause and the agreement as a whole[.]" (Doc. 38, p. 1.) The parties have conducted this discovery and Defendants and Drake have filed a renewed motion to compel arbitration. The court therefore applies the summary judgment standard of review to this motion.

### B. Motion for Summary Judgment Under Federal Rule of Civil Procedure 56

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Thomas v.*

*Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or

suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Initially, the court notes that it has the authority to determine whether an arbitration agreement exists between the parties. While "parties may delegate ['gateway questions of arbitrability,' i.e., whether an agreement covers a particular controversy,] to [an] arbitrator," they must do so by "'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Thus, when the "parties' contract [clearly and unmistakably] delegates the arbitrability question to an arbitrator, a court may not override the [delegation

clause]," *Henry Schein*, 139 S. Ct. at 529, "unless a party [specifically] challenge[s] the delegation clause and the court concludes that the delegation clause is not enforceable."  *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 215 (3d Cir. 2019) (cleaned up).  Indeed, the Third Circuit has held that "under section 4 of the FAA, courts retain the primary power to decide questions of whether the parties mutually assented to a contract containing or incorporating a delegation provision." *MXM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 402 (3d Cir. 2020).

In this case, Plaintiffs dispute their mutual assent to the DRP and the delegation clause therein.  Specifically, Plaintiffs claim that the DRP and its delegation clause operate as a prospective waiver of federal statutory rights, are illusory, unconscionable, and lack consideration.  (Doc. 51, p. 14.)  These challenges will be discussed below.[2]

### A. The DRP does not Prospectively Waive Plaintiffs' Federal Statutory Rights.

Plaintiffs believe that the DRP contains an exhaustion requirement which requires administrative exhaustion under Title VII and/or the PHRA before submitting a claim to arbitration under the DRP, which may not be feasible in all circumstances.  (Doc. 51, pp. 15–23.)  Specifically, Plaintiffs argue that the

---

[2] The court notes that many of Plaintiffs' arguments opposing the motion to compel arbitration overlap to some degree.  The court addresses each argument only once below.

exhaustion requirements under the DRP are set on a strict timetable which may expire before a claim is fully ripe under state or federal law, thus precluding their ability to timely exhaust both their claims under the DRP and state and federal law as the DRP allegedly requires.  (*Id.*)

> The Third Circuit has explained that:
>
> The prospective waiver doctrine in the arbitration context refers to a situation in which the parties agree that, if disputes arise between them, then they waive the right to rely on federal law.  The Supreme Court has observed that such waivers violate public policy.  *E.g.*, *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013).  Thus, while federal policy favors arbitration, "the Supreme Court has . . . made clear that arbitration is only appropriate so long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum."  *Blair v. Scott Specialty Gases*, 283 F.3d 595, 605 (3d Cir. 2002) (internal quotation marks, alterations, and citations omitted).  Put differently, while arbitration may be a forum to resolve disputes, *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 266 (2009), an agreement to resolve disputes in that forum will be enforced only when a litigant can pursue his statutory rights there, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985).

*Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 238 (3d Cir. 2020). For instance, the Third Circuit has held that "arbitration agreements that limit a party's substantive claims to those under tribal law, and hence forbid federal claims from being brought, are unenforceable."  *Id.* (citing *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 117–18 (2d Cir. 2019); *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 332 (4th Cir. 2017); *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 668

(4th Cir. 2016); *Smith v. W. Sky Fin., LLC*, 168 F. Supp. 3d 778, 785 (E.D. Pa. 2016)).

Plaintiffs cite to the following language from the DRP in support of their argument that this agreement operates as a prospective waiver:

> Nothing in the DRP will preclude or excuse the Employee from bringing an administrative claim before any agency in order to fulfill the obligation to exhaust administrative remedies before making a claim in arbitration.

(Doc. 51-16, p. 7.)  In addition, Plaintiffs argue that the DRP's four-step process may proceed at a different rate than an administrative exhaustion process under federal law.  (Doc. 51, p. 19.)  Specifically, Plaintiffs note that the DRP mandates that an employee submit a dispute to mediation within thirty days of an unsatisfactory Peer Review and must commence an arbitration within thirty days of a failed mediation.  (*Id.*)  Before an employee can submit a dispute "to the DRP's fourth and final step, arbitration, the DRP's Delegation Clause requires first that the arbitrator 'determine whether a dispute . . . has been timely filed and pursued[, including from one step of the DRP to the next].'"  (*Id.*)  Thus, Plaintiffs argue that by the time the DRP progresses to the point that arbitration would be required, they may not have been able to exhaust their administrative remedies under Title VII, mandating dismissal of their claims as unripe.  (*Id.*)

The court finds no evidence that this would occur on the record.  Rather than barring Plaintiffs' access to federal statutes, the DRP explicitly contemplates that

Plaintiffs will utilize administrative procedures within federal statutory frameworks to exhaust their claims before bringing them in arbitration under the DRP.[3]  This process make sense.  Because the arbitrator is relying on federal law, which includes a requirement that claims brought under Title VII be administratively exhausted, Plaintiffs' claims must be administratively exhausted before they can be resolved in arbitration.  In addition, the DRP requires employees to pursue their claims under the DRP "with reasonable diligence"—a phrase which implies some degree of leniency with respect to how the DRP is enforced.  Moreover, Defendants have responded to Plaintiffs' interrogatories that "GMRI has not moved to dismiss or preclude any claims by asserting an argument that a claimant failed to exhaust his or her administrative remedies in any arbitration proceeding involving LongHorn Steakhouse since January 1, 2015." (Doc. 51-9, p. 3.)  Thus, the court finds that the DRP does not operate to prospectively waive Plaintiffs' federal statutory rights.

### B. The DRP is not Illusory.

Plaintiffs next argue that the DRP is illusory because Defendants' employee handbook, which references the DRP and its policies, states that "[t]he policies,

---

[3] Specifically, the DRP states that: "The DRP does not prevent an Employee from exercising statutorily protected rights to file any administrative charge or complaint with administrative agencies.  Such administrative claims include, without limitation, claims or charges brought before the Equal Employment Opportunity Commission, the U.S. Department of Labor, and the National Labor Relations Board."  (Doc. 51-16, p. 7.)

procedures and benefits in this handbook are effective until changed, suspended or terminated at any time at the sole discretion of the Company." (Doc. 51, pp. 24–25.) In addition, Plaintiffs point to the acknowledgment page of the handbook, which likewise states that "the Company reserves the right to modify this handbook or amend or terminate <u>any</u> policies, procedures, or team member benefit program <u>whether or not described in this handbook</u> at any time." (*Id.* at 25 (emphasis in original).) Thus, Plaintiffs assert that Defendants, through the handbook, were able to modify or cancel the DRP at any time, rendering their promise to arbitrate illusory.

Defendants counter that the DRP and the employee handbook are two separate documents with two separate acknowledgment forms and that merely because the handbook references the DRP does not mean that it controls the DRP. (Doc. 56, pp. 11, 14–15.) Indeed, Defendants note that the handbook could easily remove references to the DRP and its processes without removing the DRP or rendering it ineffective. (*Id.* at 18.)

Pennsylvania law states that "[i]f the promise is entirely optional with the promisor, it is said to be illusory and, therefore, lacking consideration and unenforceable. The promisor has committed him/herself to nothing." *SCF Consulting, LLC v. Barrack, Rodos & Bacine*, 175 A.3d 273, 278 (Pa. 2017) (Dougherty, J., concurring) (quoting *Geisinger Clinic v. Di Cuccio*, 606 A.2d 509,

512 (Pa. Super. Ct. 1992)).  Courts within the Third Circuit have found that arbitration agreements which incorporate the following four elements are not illusory: "(1) the employer may only make modifications in writing; (2) the employer must provide notice to the employees of any modifications; (3) the employee is permitted to accept the modifications by continuing employment; and (4) the modifications are effective only prospectively."  *Crump v. MetaSource Acquisitions, LLC*, 373 F. Supp. 3d 540, 545 (E.D. Pa. 2019).

Plaintiffs rely extensively on *Crump* to support their theory that the DRP is illusory.  However, the court finds that *Crump* is distinguishable in this case.  The *Crump* court found the arbitration agreement at issue to be illusory based on the following:

> The arbitration provision appears on the last page of the employee handbook, which is numbered page 39 as part of the continuous pagination throughout the handbook.  The very top of page 39 contains the words "ACKNOWLEDGEMENT AND AGREEMENT," which are bolded, in capital letters, centered on the page, and set above the rest of the text.  There is no other heading which could be read to distinguish between portions of the page: the heading applies to the full page, including the arbitration agreement.  The text near the top of the page provides for [Defendant's] right to "revise, delete, and add to the provisions of this Employee Handbook" and "the terms and conditions of employment."  The arbitration provision is the final paragraph on this same page.  Because the arbitration provision is located within the handbook, and [Defendant's] ability to modify terms extends to all "provisions of this Employee Handbook," [Defendant] has reserved the right to "revise, delete, and add to" the arbitration provision.  *See Com. ex rel. Kane v. UPMC*, 129 A.3d 441, 463–64 (Pa. 2015) ("[T]he entire contract should be read as a whole.").  This conclusion is further buttressed by the fact that the Plaintiff signed this page only once:

directly beneath the arbitration provision.  Thus [Defendant's] attempt to divorce the arbitration agreement from the other portions of the employee handbook fails.

*Crump*, 373 F. Supp. 3d at 546–47.

In contrast to *Crump*, the DRP in this case constitutes a separate agreement with a separate acknowledgment page.  (*See* Doc. 51-4; *see also* Doc. 51-16.) Defendants' employee handbook contains a fleeting reference to the DRP within a subheading titled "Addressing Workplace Issues: The Open Door and DRP." (Doc. 51-4, p. 23.)  This description provides a general, less than one paragraph overview of the DRP and its steps, but does not come close to providing the ten pages of substantive detail contained within the DRP handbook.  (*Id.*)  The employee handbook even states that employees should have received a copy of the DRP handbook during orientation; that for additional details, employees should reference this handbook; and that if an employee needs a new copy of the DRP, they should contact their General Manager or Managing Partner or call the DRP Department.  (*Id.*)  The DRP summary appears on page 21 of the 53-page employee handbook, and Defendants could remove this reference from the handbook without removing the obligation to arbitrate.  Indeed, the fact that the employee agrees to arbitrate disputes does not appear on the final page of the handbook entitled "Understanding & Acknowledgment By Employee."  (*Id.* at 55.) Rather, the DRP contains its own acknowledgment form which does not include a

provision which would allow Defendants to "revise, delete, and add to the provisions" of the DRP, *Crump*, 373 F. Supp. 3d at 546, but instead includes a statement that: "I understand that the Company is equally bound to all of the provisions of the DRP." (Doc. 51-16, p. 14.)  The only indication that the DRP would be updated appears on the first page of the DRP with substantive text and notes that "the DRP may be updated from time to time as required by applicable law." (*Id.* at 3.)

Defendants have provided uncontroverted evidence that the DRP complies with the four-part test set forth in *Crump*.  Mary Pompilus, the Director of Dispute Resolution and Human Resource Compliance for Darden and its subsidiaries, including GMRI, declared as follows:

> The Company updates the DRP from time to time.  When it does, it does so in writing, notifying employees and providing them with a copy of the updated policy, either in hard copy or on the Company's online portal, KrowD.
>
> Employees are thus able and encouraged to review the updated DRP.
>
> Employees can accept the modifications either by acknowledging the revised policy or continuing employment.  The Company's revisions are effective prospectively.
>
> A copy of the DRP is available for employees to review on KrowD, and each restaurant is instructed to keep a hard copy in the management office for employee and management reference.
>
> The LH Handbook and DRP are not dependent on each other. Therefore, the Company could delete the Open Door section from the LH Handbook, and the DRP would still exist unchanged.

(Doc. 56-1, pp. 2–4.)  Plaintiffs have not contested the accuracy of these policies.

Thus, in light of the fact that all four of the factors listed in *Crump* have been

satisfied, and this case is otherwise factually distinguishable from *Crump*, the court

finds that the DRP is not illusory.

### C. The DRP is not Unconscionable.

Plaintiffs next argue that the DRP is unconscionable, both procedurally and

substantively.  (Doc. 51, p. 37.)  Specifically, Plaintiffs assert that the

circumstances surrounding the execution of the DRP render it procedurally

unconscionable, and the fact that the DRP's exhaustion and timeliness

requirements potentially preclude employees from asserting claims and damages

under Pennsylvania law renders it substantively unconscionable.  (*Id.* at 42–45.)

Defendants counter that Plaintiffs' arguments echo those already raised in

their prospective waiver discussion, which are more appropriate for resolution by

an arbitrator.  (Doc. 56, pp. 22–33.)

Pennsylvania law has adopted the Restatement (Second) of Contracts

regarding unconscionability, which provides that:

> If a contract or term thereof is unconscionable at the time the contract
> is made a court may refuse to enforce the contract, or may enforce the
> remainder of the contract without the unconscionable term, or may so
> limit the application of any unconscionable term as to avoid any
> unconscionable result.

18

Restatement (Second) of Contracts § 208 (1981); *see also Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 264–65 (3d Cir. 2003).  Unconscionability has two prongs and the party challenging an arbitration agreement bears the burden of demonstrating "that the agreement is *both* procedurally and substantively unconscionable." *Zimmer v. CooperNeff Advisors, Inc.*, 523 F.3d 224, 230 (3d Cir. 2008) (citations omitted).  However, Pennsylvania appears to have adopted a "sliding-scale approach" to unconscionability. *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 230 (3d Cir. 2012) (citing *Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 119 (Pa. 2007)).  With this approach, "'where the procedural unconscionability is very high, a lesser degree of substantive unconscionability may be required,' and presumably, vice-versa." *Id.*  The court discusses both prongs below.

### 1. Procedural Unconscionability

The Third Circuit has explained procedural unconscionability as follows:

"Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language." *Harris*, 183 F.3d at 181 (citing E. Allan Farnsworth, Contracts § 4.28 (2d ed. 1990)).  This element is generally satisfied if the agreement constitutes a contract of adhesion. *See, e.g.*, *Ting*, 319 F.3d at 1148 (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000)).  A contract of adhesion "'is one which is prepared by the party with excessive bargaining power who presents it to the other party for signature on a take-it-or-leave-it basis.'" *Trailer Marine Transp. Corp. v. Charley's Trucking, Inc.*, 20 V.I. 282, 284 (1984) (citation omitted).

> A contract, however, is "not unconscionable merely because the parties
> to it are unequal in bargaining position."  Restatement (Second) of
> Contracts, *supra*, § 208 cmt. d; *see also, e.g.*, *Gilmer v.*
> *Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991); *Great Western*
> *Mortgage Corp.*, 110 F.3d at 229; *Pritzker*, 7 F.3d at 1118.  An adhesion
> contract is not necessarily unenforceable.  *See, e.g.*, *Seus*, 146 F.3d at
> 184.

*Alexander*, 341 F.3d at 265.  In evaluating procedural unconscionability, courts

consider "the take-it-or-leave-it nature of the standardized form of the document,

the parties' relative bargaining positions, and the degree of economic compulsion

motivating the adhering party."  *Quilloin*, 673 F.3d at 235 (quoting *Salley*, 925

A.2d at 125) (cleaned up).

In this case, the court finds that the level of procedural unconscionability

surrounding the DRP with respect to Plaintiffs is high.  The DRP is presented to

employees on a take-it-or-leave-it basis as a condition of their employment.  The

DRP is standardized and is used nationwide without modification.  Defendants are

sophisticated entities with an abundance of business knowledge with the benefit of

counsel to draft and review the DRP.  In contrast, Plaintiffs were not highly

educated, needed the job due to their economic circumstances, and could not have

made changes to the DRP even if they wanted to.  Specifically, Jane Doe 1 was a

high school graduate working part-time with four children who had just moved

into a new apartment with a rent payment due in less than a month.  (Doc. 51-7,

p. 2.)  Jane Doe 2 had received her associates degree in graphic design, had a part-

time job with a two-year old child, had significant debt with no savings, and was

behind on payments with poor credit.  (Doc. 51-13, pp. 2–3.)  However, the court

notes that there would have been no way for Defendants to know about Plaintiffs'

individual circumstances, and there is no evidence that Plaintiffs volunteered this

information.  In addition, Plaintiffs were not precluded from seeking employment

elsewhere with a company that would not require assent to an arbitration

agreement as a condition of employment.  Finally, there is no evidence that either

Plaintiff requested additional time to review the DRP, that they were precluded

from asking questions, or that they were denied access to the DRP.

Despite these caveats, the court finds that, with respect to Plaintiffs, there

was a high level of procedural unconscionability surrounding their execution of the

DRP.  However, Plaintiffs must prove both procedural and substantive

unconscionability in order for the DRP to be set aside.  The court now turns to an

analysis of substantive unconscionability.

## 2.  Substantive Unconscionability

The Third Circuit has held that: "[a]n arbitration agreement cannot be

construed as substantively unconscionable where it 'does not alter or limit the

rights and remedies available to [a] party in the arbitral forum . . . .'"  *Quilloin*, 673

F.3d at 230 (quoting *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 364 (3d Cir.

2007) (construing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991))).

Courts may consider the following factors to determine whether an arbitration

agreement is substantively unconscionable: "severe restrictions on discovery, high

arbitration costs borne by one party, limitations on remedies, and curtailed judicial

review." *Jean v. Bucknell Univ.*, No. 4:20-cv-01722, 2021 U.S. Dist. LEXIS

73384, at *20 (M.D. Pa. Apr. 16, 2021) (citing *Ostroff v. Alterra Healthcare Corp.*,

433 F. Supp. 2d 538, 543 (E.D. Pa. 2006)).  Courts have also considered whether

one party is given the power to "unilaterally select an arbitrator, or to unilaterally

amend the arbitration agreement." *Id.*

Plaintiffs reiterate the same prospective waiver arguments raised above in

support of their position that the DRP was substantively unconscionable.  (Doc. 51,

pp. 42–43.)  The court has already found Plaintiffs' arguments concerning

prospective waiver unpersuasive and does not restate these conclusions here.

Because the court has already found that the DRP "does not alter or limit the rights

and remedies available to a party in the arbitral forum," *Quilloin*, 673 F.3d at 230

(cleaned up), the court likewise finds that the level of substantive

unconscionability is virtually nonexistent.  The DRP does not contain severe

restrictions on discovery, impose high arbitration costs on one party, impose

limitations on remedies, or curtail judicial review.  Rather, the DRP notes that:

> The Company will pay the arbitrator's fees and expenses, any costs for
> the hearing facility, and any costs of the arbitration service.

> Any other expenses incurred by a party during the arbitration are the party's responsibility subject to remedies awarded by the arbitrator in accordance with applicable law. This includes, by way of example only, transcript preparation fees, attorneys' fees, and expert witness fees. However, an arbitrator is authorized to award fees and costs in accordance with and subject to the limitations of applicable law.

(Doc. 51-16, p. 11.) These costs are the same, if not lower than, those associated with bringing a lawsuit in federal court. Moreover, the DRP states that "[t]he arbitrator will have the same authority as a court of law to grant requested relief[.]" (*Id.* at 12.) The DRP also provides that an arbitration service, such as the American Arbitration Association, JAMS, or Resolute Systems, Inc., will select the arbitrator to preside over the arbitration, but that alternatively, "the parties may agree to jointly select an arbitrator that meets the qualifications without the assistance of an arbitration service." (*Id.* at 10.) Thus, the court finds that the DRP is not substantively unconscionable. Because Plaintiffs have not proven both procedural and substantive unconscionability, the DRP is not set aside on this basis.

### D. There was Adequate Consideration to Support the DRP.

Plaintiffs next argue that the DRP was not supported by adequate consideration.[4] The majority of courts within this circuit have held that continued

---

[4] Many of Plaintiffs' arguments that the DRP is unsupported by consideration have already been considered and rejected by the court. Therefore, the court only addresses whether Plaintiffs' continued employment was sufficient consideration for the DRP.

employment constitutes sufficient consideration for an arbitration agreement. *See, e.g.*, *Bracy v. Macy's Retail Holdings, Inc.*, No. 19-3825, 2020 U.S. Dist. LEXIS 71550, at *19 (E.D. Pa. Apr. 23, 2020) ("Under Pennsylvania law, continued employment after receiving notice of an arbitration policy is sufficient to establish acceptance of, as well as consideration for, an arbitration agreement.") (collecting cases); *Keller v. Pfizer, Inc.*, No. 1:17-cv-1883, 2018 U.S. Dist. LEXIS 191174, at *8–11 (M.D. Pa. Nov. 8, 2018) (concluding that "Plaintiff may lawfully agree to an arbitration agreement contained in an employee hiring packet or training module, . . . by continued employment rather than a physical signature") (collecting cases); *Jaludi v. Citigroup*, No. 3:15-cv-2076, 2016 U.S. Dist. LEXIS 115962, at *11 (M.D. Pa. Aug. 30, 2016) (overturned on other grounds) (holding that continued employment constitutes necessary consideration for an arbitration agreement); *Alexander v. Raymours Furniture Co.*, No. 13-5387, 2014 U.S. Dist. LEXIS 111962, at *17–18 (E.D. Pa. Aug. 13, 2014) ("Numerous courts in this district have held 'continued employment fulfills the consideration requirement [for an arbitration agreement] under Pennsylvania law.'"); *Grant v. Phila. Eagles LLC*, No. 09-1222, 2009 U.S. Dist. LEXIS 53075, at *15–16 (E.D. Pa. Jun. 24, 2009) (collecting cases); *Wilson v. Darden Restaurants, Inc.*, No. 99-5020, 2000 U.S. Dist. LEXIS 1274, at *8–9 (E.D. Pa. Feb. 11, 2000).

*Crump*, upon which Plaintiffs rely, concludes that continued employment does not serve as consideration for an arbitration agreement. 373 F. Supp. 3d at 547–48. However, this case appears to stand as an outlier on this score and is inconsistent with caselaw within the district and the circuit. Thus, the court joins the majority of other courts in this circuit in finding that Plaintiffs' continued employment was sufficient consideration to support the DRP in this case.

Having resolved the final argument raised by Plaintiff regarding enforceability, the court concludes that the DRP is enforceable.[5]

### E. Plaintiffs' Tort Claims Against Drake are Within the Scope of the DRP.

Lastly, the court turns to the question of whether Plaintiffs' claims against Defendant Drake fall within the scope of the DRP.[6] Plaintiffs argue that their claims against Drake are not subject to the DRP because he was not a party to their purported agreement to arbitrate with the company. (Doc. 52, pp. 2, 7–8.) In other words, their agreement to arbitrate was with the corporate Defendants, but not Drake. (*Id.*) Plaintiffs also argue that their claims against Drake are unrelated to

---

[5] Because the court has determined that the DRP is enforceable, the court does not address Plaintiffs' arguments regarding severability.

[6] Defendants argue that this should be a question presented to the arbitrator. However, the court's foundational responsibilities are establishing that (1) there is a "valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." *Flintkote Co.*, 769 F.3d at 220 (internal quotation marks omitted). Thus, the court is obligated to determine whether Plaintiffs' claims against Drake fall within the scope of the DRP.

their claims against Defendants, and therefore, equitable estoppel cannot compel

them to arbitrate their claims against Drake.  (*Id.* at 2, 8–11.)

Drake counters that he is entitled to compel Plaintiffs to arbitrate despite

being a non-signatory to the DRP because there is an obvious and close nexus

between Drake and Defendants and because Drake acted as an agent of

Defendants.  (Doc. 59, p. 2.)  Drake asserts that principles of agency and equitable

estoppel allow him to enforce the DRP.  (*Id.*)

As explained above, arbitration is a creature of contract law, and therefore,

traditional principles governing contract and agency law apply to determine

whether a non-signatory can enforce the agreement.  *E.I. DuPont de Nemours &

Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 195 (3d

Cir. 2001) ("Each of appellants' theories for binding [appellee] to the arbitration

clause, i.e., third party beneficiary, agency/principal, and equitable estoppel, is a

recognized principle of contract or agency law applicable in the arbitration

context.").  While ordinarily courts apply a presumption in favor of enforcing

arbitration agreements, the Third Circuit has explained that:

> The presumption in favor of arbitration does not extend, however, to
> non-signatories to an agreement; it applies only when both parties have
> consented to and are bound by the arbitration clause.  *See United
> Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S.
> 574, 582 (1960) ("[A] party cannot be required to submit to arbitration
> any dispute which he has not agreed so to submit."); *Bel-Ray Co., Inc.
> v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999) ("If a party has
> not agreed to arbitrate, the courts have no authority to mandate that he

do so."). Still, a non-signatory may be bound by an arbitration agreement if "'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009); *see also Dupont*, 269 F.3d at 194 (a non-signatory may be bound to an arbitration agreement if "under traditional principles of contract . . . [the party is] akin to a signatory of the underlying agreement") (internal quotation marks and citation omitted).

*Griswold v. Coventry First LLC*, 762 F.3d 264, 271 (3d Cir. 2014).

The Third Circuit has held that Pennsylvania's agency law provides "that non[-]signatory agents may invoke a valid arbitration agreement entered into by their principal." *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, (3d Cir. 2007). This notion is "well-settled and supported by other decisions of this Court." *Id.* (collecting case)

In this case, Drake is undisputedly Defendants' agent. He worked as a manager for one of Defendants' restaurants and was responsible for overseeing the employees in Defendants' restaurant, including Plaintiffs. Indeed, Plaintiffs' complaint avers that "[a]t all times relevant and material herein, Defendant Darden acted by and through its ostensible and/or actual agents, servants, workmen and/or employees." (Doc. 1, ¶ 17.) Plaintiffs' claims against both Defendants and Drake arose from Drake's conduct within the course and scope of his employment as a manager for Defendants. Thus, the court finds that under principles of

Pennsylvania agency law, Drake may compel Plaintiffs to arbitrate their claims against him.[7]

<div align="center">

**CONCLUSION**

</div>

For the foregoing reasons, Defendants' renewed motion to compel arbitration will be granted.  (Doc. 46.)  An appropriate order follows.

<div style="margin-left: 50%;">

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

</div>

Dated: January 27, 2022

---

[7] Because the court concludes that principles of agency law allow Drake to compel arbitration, the court does not address Drake's claims that equitable estoppel would allow him to enforce the DRP.